Filed 1/7/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID VENEGAS et al.,<br><br>    Defendants and Appellants. | B292976<br><br>(Los Angeles County<br>Super. Ct. No. BA462582) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald Coen, Judge.  Affirmed.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant David Venegas.

Brad Kaiserman, under appointment by the Court of Appeal, for Defendant and Appellant Sebastian Santana.

Xavier Becerra, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Roberta L. Davis, Deputy Attorney General, for Plaintiff and Respondent.

* * * * * *

Sebastian Santana and David Venegas were trying to shoot Juan Vargas but murdered Fabian Acevedo instead. The appellate issues include two evidence problems, several sentencing questions, challenges to the sufficiency of the evidence and to a jury instruction, and requests for hearings under *People v. Dueñas* (2019) 30 Cal.App.5th 1157. We affirm. Unspecified citations are to the Penal Code.

## I

Venegas and Santana were in the Winter Gardens gang, which was locked in a border war with the Fraser Maravilla gang. Vargas was in Fraser Maravilla. Venegas and Santana sought to kill him but instead shot Acevedo, who belonged to no gang and was just passing through.

Santana had a bad history with Vargas. Vargas had wounded Santana's brother, and Santana had vowed to shoot Vargas on sight if he got the chance.

On the deadly day, Santana and Venegas were out prowling for rivals to shoot. They were not looking for anyone in particular. Any enemy would do. Santana drove a car and Venegas was on a motorcycle along the contested frontier. Santana spied Vargas on foot as he drove by. They made eye contact, prompting Vargas to flee towards a nearby casino. Santana directed Venegas to go shoot Vargas. Venegas rode to the casino's entrance and gunned down a man he thought was Vargas but who actually was Acevedo. Venegas and Santana fled. Vargas escaped. Acevedo died.

Separate juries convicted Venegas and Santana on all counts. One jury found Venegas guilty of first degree murder, while the second jury convicted Santana of aiding and abetting murder in the second degree.

In addition to a murder sentence, the trial court imposed on Santana a sentence enhancement of 25 years to life for discharging a firearm that caused death. (§ 12022.53, subd. (d).) The court imposed and stayed sentences for lesser gun enhancements. The court followed the same sentencing pattern for Venegas.

## II

On appeal, Venegas and Santana have filed separate briefs. Venegas makes two arguments for himself alone, while Santana makes four arguments applying only to his case. Then they make two shared arguments. We proceed in that order.

## A

We begin with Venegas's arguments.

## 1

Venegas's first argument concerns evidence. This evidence was a series of text messages from Santana to his brother, who was not a defendant and who did not testify. These texts were admissible.

The prosecution obtained the texts from Santana's brother's phone. An officer read them to Venegas's jury. Venegas does not challenge this process. Rather Venegas claims the texts were inadmissible hearsay and violated the Confrontation Clause.

Venegas trains his attack on five texts Santana sent to his brother. All five involved Venegas, whom Santana called "Sponge." These messages relate to an unchallenged earlier text, which was a photo of a .45 caliber pistol. Other evidence suggested Venegas used this gun to kill Acevedo.

Evidence analysts must pay close attention to the precise words or things at issue. So we quote the five challenged messages, adding bracketed context for clarity:

1. "[S]ee if sponge wants to sell that for five [hundred dollars]. I just want [to] get rid of [the gun]."
2. "[S]ponge just texted me. . . . [$520 is a] done deal."
3. "I'll have Sponge meet you somewhere and give it to you. And you'll go sell it."
4. "[S]ponge is only getting $450."
5. "[S]ponge said he'll drop [the gun] off before 5:00. . . Be careful and drive normal. Stash it real good."

We follow a standard agenda to determine admissibility.

First, the statements were relevant. The prosecution claimed this gun was the murder weapon. Combined with other proof, this series of messages tended to show Venegas and Santana had access to the murder weapon before the shooting and were trying to dispose of it soon afterwards. Relevance is obvious.

Second, these texts were not unfairly prejudicial. The evidence presentation was brief and lacked visceral impact. The court exercised sound discretion under section 352 of the Evidence Code.

Third, these texts were not hearsay. They were not offered for the truth of the matter asserted. (See Evid. Code, § 1200.)

For instance, take the message that "[S]ponge said he'll drop [the gun] off before 5:00." The prosecution did not offer this evidence to prove Venegas would, or did, drop off a gun before 5:00. This evidence was not for the truth it asserted. Rather, it was to show Venegas and Santana were working to get rid of a

gun.  This tended to show consciousness of guilt and is textbook nonhearsay.

Nor did the prosecution offer the statement "[$520 is a] done deal" to prove $520 truly was a done deal.  Nor was "[S]ponge is only getting $450" offered to prove Sponge would get $450.  All this back-and-forth was offered for the nonhearsay purpose of consciousness of guilt, not to establish a dollar amount or to show Sponge's cut.  The texters were discussing how to dispose of the .45.  For the proponent of the evidence, deal terms and dollar sums were hardly the point.

And so on.  Each statement was nonhearsay.  (See, e.g., *People v. Dalton* (2019) 7 Cal.5th 166, 232.)  The trial court rightly admitted this evidence.

Venegas was entitled to a limiting instruction, but it was his burden to request it, and his option to abstain from the request.  (See Evid. Code, § 355; *People v. Valdez* (2012) 55 Cal.4th 82, 139.)

Venegas's tactical decision to forgo a request for a limiting instruction was customary.  Many effective trial lawyers do likewise.  A good trial lawyer can share the Supreme Court's doubts about the utility of limiting instructions.  (See *Bruton v. U.S.* (1968) 391 U.S. 123, 132–133 & fn. 8.)  Experienced trial lawyers may worry limiting instructions can simply underline evidence they would rather not highlight.  And there can be some strategic advantage in minimizing objections, for familiar reasons.  Venegas's lawyer made a defensible decision that Venegas cannot now protest.

Venegas incorrectly claims this evidence violated *Crawford v. Washington* (2004) 541 U.S. 36, 59–60 footnote 9 (*Crawford*),

but *Crawford* does not apply to nonhearsay. (See also *People v. Hopson* (2017) 3 Cal.5th 424, 432.)

2

Venegas's second argument is about sentencing. He argues the court erred by imposing a concurrent term on count two instead of staying the sentence under section 654. Count two was possession of a firearm by a felon. Count one was murder. The jury convicted Venegas on both counts. The court imposed a seven-year concurrent sentence for count two and a gang enhancement.

This argument errs because the trial court correctly construed its obligations under section 654.

The pertinent law begins with section 654, which prohibits multiple punishments for a single act or course of conduct. (*People v. Ramirez* (2006) 39 Cal.4th 398, 478.) Whether an offense is an indivisible course of conduct is a fact question. We uphold the trial court's ruling when substantial evidence supports it. (*People v. Brents* (2012) 53 Cal.4th 599, 618.) This standard of review is exceedingly deferential. (*People v. Lopez* (2011) 198 Cal.App.4th 698, 717.)

With respect to additional punishment for possessing a gun, the conduct is divisible, and additional punishment therefore proper, so long as Venegas purposefully possessed the gun *before* the murder took place. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1144 (*Jones*).)

This question boils down to whether Venegas possessed the gun at the beginning of his motorcycle ride or whether he got it only after he arrived at the murder scene.

Substantial evidence supports the trial court's determination Venegas had the gun before arriving at the crime

6

scene. The evidence was Venegas was on the hunt. We indulge all inferences favorable to the trial court's determination under this standard of review. The logical inference is the hunter armed himself before the hunt. That is how hunts usually work. Moreover, no evidence or logic suggested someone handed Venegas the gun at the scene, or that Venegas happened upon a loaded .45 on the street. Such events are uncommon. The reasonable inference is Venegas began his motorcycle ride with the gun. Thus Venegas purposefully possessed the gun before he drew it to shoot Acevedo. The trial court decision was correct.

B

We now turn to Santana's four issues.

1

Santana challenges the sufficiency of the evidence for his aiding-and-abetting conviction of the murder of Acevedo. Santana does not dispute he directed Venegas to shoot Vargas or that Venegas did shoot Acevedo. Santana precisely targets his argument. He postulates an imaginative alternative: that perhaps Venegas shot Acevedo, not by mistake, but because Venegas — after getting Santana's instruction "shoot Vargas" — for some unexplained reason formulated an independent decision to shoot Acevedo instead of Vargas.

This creative argument founders on the standard of review, which requires us to review the record in the light most favorable to the prosecution. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1263.) This standard of review requires us to reject Santana's fanciful speculation. Viewing the record as we must, ample evidence showed Venegas meant, at Santana's direction, to shoot Vargas but then mixed up Acevedo with Vargas and shot Acevedo by mistake.

7

Motive is key.  Venegas and Santana were friends and gang fellows and were working as a team.  Santana admitted he "took a few turns" around the neighborhood that day looking for rival gang members.  He said he would shoot Vargas on sight if he got the chance.  Santana made eye contact with Vargas.  Thereafter Santana pointed to an alley and Venegas went there and shot the first person he saw, who was Acevedo.  Santana's desire to have Venegas shoot Vargas is the parsimonious explanation for these events.

Santana's suggestion that perhaps Venegas independently decided to shoot Acevedo for some unknown reason lacks evidentiary support and makes no sense.  Venegas had no motive to act this way.  By contrast, Venegas had ample motive to try to kill gang rival Vargas, whom Santana wanted dead.

Santana cites the inapposite case of *In re Brigham* (2016) 3 Cal.App.5th 318, 324 (*Brigham*), in which three hired killers hunted one Chuckie.  Brigham — "an experienced hit man" — saw a young guy.  Brigham said it was Chuckie.  As they got closer, though, Brigham said "man, that is not Chuckie, man." (*Ibid.*)  Yet Brigham's fellow hit man persisted, saying "we're gonna get him."  Brigham implored his fellow:  "Don't do it.  It ain't cool.  That's not the dude, man.  Come on." (*Ibid.*)  Brigham tried to grab this triggerman's arm, but to no avail.  The triggerman shot the person anyway, even though this victim was not Chuckie.  The *Brigham* opinion ruled Brigham was not guilty of aiding and abetting this murder because the triggerman made an "independent, intentional, deliberate and premeditated decision to kill" a different victim than Chuckie.  That decision reflected "a personal and subjective state of mind that was

insufficiently connected to [Brigham's] culpability for aiding and abetting the (intended) murder of Chuckie . . . ." (*Id.* at p. 329.)

*Brigham* is irrelevant. Brigham realized his killers had the wrong target and tried to stop the murder. Santana did neither.

Substantial evidence supported Santana's conviction.

2

Santana makes an erroneous argument about a jury instruction. This argument is CALJIC 8.65 failed to clarify the jury could convict Santana of murder only if it found *beyond a reasonable doubt* that Venegas believed he was shooting the intended target.

CALJIC 8.65 states "[w]hen one attempts to kill a certain person, but by mistake or inadvertence kills a different person, the crime, if any, so committed is the same as though the person originally intended to be killed, had been killed."

The trial court gave a proper reasonable doubt instruction. The prosecution argued the case entirely in terms of reasonable doubt. No one at trial mentioned some other standard of proof. Santana does not dispute these points. The reasonable doubt standard governed, undoubtedly. This argument is insubstantial.

3

Santana incorrectly argues the trial court violated his right to due process by admitting evidence of a disassembled assault rifle and several magazines found at Venegas's house. This rifle was not the murder weapon. Santana says admitting evidence of a rifle different than the murder weapon was unfairly prejudicial and was inadmissible propensity evidence.

The trial court correctly cited *People v. Nguyen* (2015) 61 Cal.4th 1015, 1073 (*Nguyen*) in support of admitting this evidence. Justice Liu's opinion approved of just such evidence as

9

tending to prove a defendant was a gang member at war with a rival gang. The same rationale applied here. This assault rifle tended to show Venegas had a stockpile of weapons he kept, together with accompanying Winter Gardens gang paraphernalia. It tended to show Venegas was a gang member at war with a rival gang, and that Santana knew he could count on Venegas to be armed for battle. The trial court's ruling was right.

Santana responds to *Nguyen* only by saying it was *undisputed* that "Santana was a gang member involved in a gang war against rival Fraser Maravilla, of which Vargas was a member . . . ." Santana suggests this gun evidence was irrelevant because the proof about Vargas and the gang war was strong. This is 20-20 hindsight. Santana never offered to stipulate to these facts at trial. Santana entered a not guilty plea and thus put every fact and issue in dispute. This argument fails.

4

Santana argues he is entitled to resentencing on the prior serious felony conviction enhancement in light of Senate Bill 1393 (2017–2018 Reg. Sess.).

Santana received an additional five years as part of his sentence under section 667, subdivision (a) for his prior serious felony conviction. At the time of sentencing, imposition of the section 667, subdivision (a) enhancement was mandatory. (See *People v. Valencia* (1989) 207 Cal.App.3d 1042, 1045–1047.)

Senate Bill 1393 became effective January 1, 2019. It removed the prohibition on striking the enhancement by deleting the provision of the former version of section 1385, subdivision (b), which stated: "This section does not authorize a judge to strike any prior conviction of a serious felony for purposes of

10

enhancement of a sentence under Section 667." (Sen. Bill No. 1393 (2017–2018 Reg. Sess.) § 2.)

Because Senate Bill 1393 has taken effect and Santana's judgment is not yet final, the new law applies to him retroactively. (See *People v. Garcia* (2018) 28 Cal.App.5th 961, 971–974 [holding that Senate Bill 1393 applies to all cases not yet final on appeal as of the statute's effective date of January 1, 2019].)

Remanding for resentencing, however, is unnecessary. The trial judge said he would not have dismissed the enhancements even if he had the statutory authority to do so. "Although it's not the law at this time, it will be retroactive, I find the same rationale would apply to [the] Penal Code section 667 subdivision (a) subdivision (1) prior conviction. Consequently, if I had discretion today, I would not strike that prior conviction."

This statement makes remand unnecessary. (See *People v. Franks* (2019) 35 Cal.App.5th 883, 892.)

C

Venegas and Santana make two arguments jointly.

1

Together Santana and Venegas request sentencing remands under a new law about gun sentencing, but this relief would be pointless. The new law gave trial judges sentencing discretion over gun penalties. But here the trial judge said he would not exercise his discretion to modify the gun sentences for these two. We do not remand.

We briefly give background. The new statute is Senate Bill 620 (2017–2018 Reg. Sess.) (SB 620), which the Governor signed on October 11, 2017. SB 620 amended section 12022.53 to give

11

trial courts discretion to strike firearm enhancements. (*People v. Morrison* (2019) 34 Cal.App.5th 217, 221.)

This new discretion cannot aid Venegas or Santana because the trial judge plainly stated it would be against the interests of justice to reduce their sentences.

The trial court imposed 25-years-to-life firearm enhancements under section 12022.53, subdivision (d), upon Venegas and Santana.

Venegas did not ask the court to strike the 25-years-to-life subdivision (d) enhancement. Nevertheless, the court said "counsel had not asked this Court to exercise its discretion under 12022.53 subdivision (h), and I do realize I have that discretion, and even if counsel had asked for it *I would refuse, finding no good cause to strike any use enhancement*."

Turning now to Santana, his attorney did ask the court to exercise its discretion to strike the subdivision (d) enhancement. The court refused. It noted that, while section 12022.53, subdivision (h) gave it discretion to strike "one or more of the gun allegations," Santana's criminal history made him a poor candidate: he committed this offense in 2017, four years after being discharged from parole for a robbery conviction, and he had an extensive juvenile criminal history, including a weapons violation. The court refused to strike "any weapon enhancement."

We deny Venegas's and Santana's request for sentencing remands. The court's statements make the requested remedy worse than pointless: remands would force people to expend resources but sentences would not change. There would be cost but no benefit.

12

2

Venegas and Santana seek remands to determine their ability to pay fines and fees.  Neither defendant objected to the fines and fees in the trial court.  They have forfeited these arguments.  (*People v. Bipialaka* (2019) 34 Cal.App.5th 455, 464.)

**DISPOSITION**

The judgments are affirmed.


WILEY, J.


We concur:


GRIMES, Acting P. J.


STRATTON, J.

13