Filed 2/21/24  P. v. Hines CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C098199 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE000998) |
| v. | |
| KEVIN HINES, | |
| Defendant and Appellant. | |

After a jury found defendant Kevin Hines guilty of committing forcible lewd acts on a child under age 14 (Pen. Code, § 288, subd. (b)(1))[1] and sexual penetration of a child under age 11 (§ 288.7, subd. (b)), the trial court sentenced him to prison and ordered him to pay $1,950.59 in restitution to the California Victim Compensation Board (the Board).  On appeal, Hines argues (1) the prosecutor committed misconduct by

---

[1] Undesignated statutory references are to the Penal Code.

1

misstating the burden of proof in closing argument to the jury and his trial counsel was ineffective in failing to object to the prosecutor's remarks, and (2) the restitution order must be reversed due to inadequate proof. We agree with the People that the first claim is unpersuasive because trial counsel may have had tactical reasons for not objecting and the second claim has merit. Accordingly, we will reverse the restitution order and remand the matter for a new restitution hearing. We affirm the judgment in all other respects.

## BACKGROUND

The underlying facts of Hines's crimes are largely irrelevant to our resolution of this appeal. We provide a brief summary for context.

### I

*Factual Background*

Doe testified at trial that she was born in 2011 and first met Hines when she was about seven years old. Hines lived with Doe and her mother until 2020 when Doe revealed during a medical appointment that Hines had been sexually abusing her.

Doe's mother made the medical appointment after Doe told her it was painful to urinate. After a test indicated no urinary tract infection, a doctor examined Doe's vaginal area in Doe's mother's presence and observed discharge and multiple ulcers, leading the doctor to suspect Doe had a sexually transmitted infection (STI).

The doctor asked Doe's mother if anyone else lived in the home or looked after Doe. Doe's mother replied that Hines did. The doctor asked Doe "if anyone had touched her or hurt her in any way, and . . . told her . . . she would not get into any trouble if she told . . . the truth." Doe started crying and said, "Mommy, he touched me." It was clear to the doctor that Doe was referring to her mother's boyfriend. Sobbing, Doe said her mother's boyfriend had put his fingers and his penis inside her genitalia multiple times and indicated she was scared to talk about it because the boyfriend told her she would get

2

in trouble if she told her mother. She also said she had been feeling the "burning and pain" for two or three months.

A medical doctor who specialized in sexual assault examinations explained to the jury that Doe's genital area showed multiple ulcers. Laboratory tests revealed that Doe had an infection typically transmitted through sexual contact. Hines also tested positive for the same STI.

## II

### *Procedural Background*

#### A.     *Jury Instructions*

Before the parties made their closing arguments, the trial court instructed the jury that Hines was presumed to be innocent; this presumption required the prosecution to prove him guilty beyond a reasonable doubt; proof beyond a reasonable doubt is proof that leaves one with an abiding conviction that the charge is true; and, unless the evidence proved Hines guilty beyond a reasonable doubt, he was entitled to an acquittal. The trial court further instructed the jury to follow its explanation of the law, even if they disagreed with it, and if the attorneys' "comments on the law" conflict with the trial court's instructions, the jury must follow the trial court's instructions. The trial court said it would give a copy of its instructions to the jury to use in the jury room.

#### B.     *Closing Arguments*

##### 1.     *Prosecutor's Closing Argument*

"[B]elieve [Doe]," the prosecutor told the jury in closing argument. "[T]hat little girl . . . had the confidence to come forward with what this man was doing to her, stick with the case for two and a half years, and then come in here and talk to a room full of strangers about what he did, sitting ten feet away from him after not having seen him that whole time." The prosecutor acknowledged it was "absolutely [her] burden in th[e] case, beyond a reasonable doubt." The prosecutor argued she met that burden in light of "the mountain of corroboration" of Doe's allegations, including (1) Doe's "emotional

3

disclosure" to a doctor, (2) the "scientific corroboration" that Hines and Doe had the same STI, the "innocent transfer" of which, while possible, was unlikely, and (3) Doe had no reason to lie.

The prosecutor told the jury she expected the defense would argue Doe was lying, "because *for you to find the defendant not guilty*, *you have to find that she is lying*, that she is making it up. And I anticipate, based on the questions they asked her, they're going to say that [Doe] saw the arguments between Mr. Hines and her mother and was mad at him for those arguments. Or that she wanted her mom all to herself, so she made it up because she was jealous. [¶] You might be sitting there thinking, 'I already don't believe that,' but I have to address it because this is their whole argument. *They have to convince you she made it up*." (Italics added.)

Later, the prosecutor asked the jury to "assume for a second" that Doe "made it all up because she doesn't like" Hines. "Let's examine what that actually looks like. So this little girl . . . is such a mastermind to come up with this idea to oust her potential stepdad, she either willingly or coordinates contracting [an STI]. She waits until she has a very painful outbreak to go to the doctor. Then she is the world's greatest actress and sobs to the doctor, telling these lies about him. And then, by the most insane coincidence, he tests positive for the exact same virus. [¶] That is the very perfect example of an unreasonable doubt. That explanation is unreasonable. It's not based in reason, in logic, or common sense. *What is reasonable is that [Doe] is telling the truth and you should believe her*." (Italics added.) Defense counsel did not object to any of the statements above.

### 2. *Defendant's Closing Argument*

Near the beginning of his argument to the jury, defense counsel emphasized he had no obligation to provide answers. "The burden of proof always rests with the prosecution to prove each and every element of the crime beyond a reasonable doubt." Despite the absence of such an obligation, defense counsel told the jury he would indeed

4

provide an "answer":  Doe "flat-out did not tell you the truth."  "Why would [Doe] fabricate allegations of sexual abuse against . . . Hines?" counsel asked rhetorically.  Because her mother and Hines often argued in her presence and that "made her angry and made her wish that . . . Hines was no longer around."  Also, Doe "may have resented . . . Hines for taking up so much of her mother's time," reducing the amount of time she spent with her mother.  Counsel commented that because the STI can be transmitted innocently it was possible Doe contracted it from her mother, who had previously been diagnosed with the same infection.

Toward the end of his remarks, defense counsel again emphasized the burden of proof:  "[Y]ou should be asking yourself, am I convinced beyond a reasonable doubt that the defendant committed the crimes with which he's been charged?  Or is there that little nagging doubt, that little voice inside of you that says, you know, I'm just not convinced beyond a reasonable doubt?  Something doesn't add up."  "[T]he prosecutor has that heavy, heavy burden of proving the charges beyond a reasonable doubt.  That means each and every element of the charges."

C.      *Verdicts, Sentence, and Restitution Order*

After the jury found Hines guilty of seven counts of forcible lewd acts on a child under age 14 (§ 288, subd. (b)(1)) and one count of sexual penetration of a child under age 11 (§ 288.7, subd. (b)), the trial court imposed a determinate sentence of 125 years and an indeterminate sentence of 30 years to life.

The trial court also ordered Hines to pay $1,950.59 in restitution to the Board for victim "relocation" costs.  It did so after the courtroom clerk observed the presentencing report indicated probation officers "asked for certain receipts and did not receive them as of yet."  Hines appealed.

5

# DISCUSSION

## I

### *Counsel's Tactical Reasons for Not Objecting to the Prosecutor's Misstatements*

Hines contends the prosecutor committed misconduct by misstating the burden of proof in closing argument. Recognizing that such a claim is forfeited if not first raised by a timely objection in the trial court (*People v. Samayoa* (1997) 15 Cal.4th 795, 841), Hines contends his trial counsel was ineffective in failing to object to the remarks. We agree with the People that the claim is forfeited on appeal because trial counsel did not object and may have had tactical reasons for not objecting.

To demonstrate ineffective assistance of counsel, a defendant must show both that (1) counsel's performance was deficient because the representation fell below an objective standard of reasonableness under prevailing professional norms and (2) prejudice resulted from the deficient performance. Prejudice is shown when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. In examining a claim of ineffective assistance of counsel, reviewing courts should not second-guess reasonable, if difficult, tactical decisions. Rather, there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional representation. If counsel's reasons for the challenged decisions do not appear on the record in a direct appeal, reviewing courts will not find ineffective assistance of counsel unless there could be no conceivable reason for counsel's acts or omissions. (*People v. Weaver* (2001) 26 Cal.4th 876, 925-926.)

Competent counsel may forgo even a valid objection for tactical reasons. (*People v. Campbell* (2020) 51 Cal.App.5th 463, 506.) " '[I]n the heat of a trial,' " counsel is in the best position to determine proper tactics " 'in the light of the jury's apparent reaction to the proceedings,' " and the decision whether to object " 'is inherently a matter of trial tactics not ordinarily reviewable on appeal.' " (*People v. Riel* (2000) 22 Cal.4th 1153, 1197-1198.)

6

Here, we agree that at least some of the prosecutor's remarks italicized above were misstatements of law to which competent counsel might have objected. But trial counsel may have had tactical reasons for not objecting. He knew the trial court (1) correctly instructed the jury on the presumption of innocence and the prosecution's burden to prove Hines's guilt beyond a reasonable doubt, (2) instructed the jury to disregard the attorneys' comments on the law if they conflicted with its instructions, and (3) said it was going to give a copy of its instructions to the jury to use during deliberations. He also knew that he would argue to the jury that he had no obligation to provide any answers and that the prosecution had a "heavy, heavy burden of proving the charges beyond a reasonable doubt." This knowledge may have led counsel to conclude that the prosecutor's remarks would not mislead the jury and that objecting to them would appear overly combative. (See *People v. Campbell, supra*, 51 Cal.App.5th at p. 506; cf. *People v. Dalton* (2019) 7 Cal.5th 166, 259-261 [no reasonable probability that the prosecutor's misstatements to the jury in closing argument regarding the burden of proof confused or misled the jury because, inter alia, defense counsel emphasized the trial court's correct instructions on reasonable doubt, the trial court instructed the jury to follow its instructions if the attorneys said anything in their arguments that conflicted with its instructions, and the trial court gave its written instructions to the jury to consult during deliberations].)

Accordingly, Hines's claim of prosecutorial error is forfeited on appeal and his claim of ineffective assistance of counsel is unpersuasive.

II

*Restitution Order*

Section 1202.4, subdivision (f)(4) provides that if a criminal defendant's conduct leads to the provision of assistance to a victim, the amount of assistance provided shall be presumed to be a direct result of the defendant's criminal conduct, shall be included in the amount of the restitution ordered, and "shall be established by" certified copies of

7

bills submitted to the Board "together with a statement made under penalty of perjury by the custodian of records that those bills were submitted to and were paid by the [B]oard." (§ 1202.4, subd. (f)(4)(A), (B).)

The parties agree that the trial court's restitution order payable to the Board must be reversed because the proof for it was not produced in accord with section 1202.4, subdivision (f)(4). Specifically, the People concede the restitution order "was not supported with certified copies of bills in compliance with section 1202.4, subdivision (f)(4)(B)." We agree. The record indicates that the trial court did not have before it certified copies of bills submitted to and paid by the Board. Accordingly, the restitution order was unauthorized. (See *People v. Franks* (2019) 35 Cal.App.5th 883, 893 [striking the trial court's order of payment to the Board in part because of insufficient documentation in light of § 1202.4, subd. (f)(4)(B)].)

DISPOSITION

The restitution order of $1,950.59 is reversed, and the matter is remanded to the trial court to conduct a new restitution hearing, after which it shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

_____/s/_____
BOULWARE EURIE, J.

We concur:

_____/s/_____
MAURO, Acting P. J.

_____/s/_____
MESIWALA, J.

8