Filed 2/16/21  P. v. Mata CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JOHNNY MATA,<br><br>        Defendant and Appellant. | B301044<br><br>(Los Angeles County<br>Super. Ct. No. KA101342) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Robert M. Martinez, Judge.  Affirmed with directions.

        Mary Jo Strnad, under appointment by the Court of Appeal, for Defendant and Appellant.

        Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Steven E. Mercer, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted Johnny Mata of attempted murder and possession of a firearm by a felon.  Mata appealed, arguing the trial court erred in denying his motion under *Batson v. Kentucky* (1986) 476 U.S. 79 [106 S.Ct. 1712, 90 L.Ed.2d 69] and *People v. Wheeler* (1978) 22 Cal.3d 258, commonly referred to as a *Batson/Wheeler* motion.  (*People v. Mata* (Mar. 26, 2018, B270264) [nonpub. opn.] (*Mata I*).)  In that appeal we held the trial court erred in failing to complete the three-step inquiry required to rule on a *Batson/Wheeler* motion, conditionally reversed the judgment, and directed the trial court to complete steps two and three of the *Batson/Wheeler* analysis.  On remand the trial court ruled Mata failed to demonstrate the prosecutor exercised any peremptory challenges in a discriminatory manner.

Mata appealed again.  He argues the trial court failed to comply with this court's directions and erred in denying his *Batson/Wheeler* motion.  Mata also argues the trial court lacked jurisdiction to sentence him under the three strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d))[1] or to impose a five-year enhancement for a prior serious felony conviction under section 667, subdivision (a).  Finally, Mata argues that, even if the court had jurisdiction to impose the five-year enhancement, we should remand the matter to allow the trial court to exercise its discretion whether to strike it.  We agree with the last argument, and otherwise affirm.

---

[1]     Undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Mata I*

Because this is Mata's fourth appeal,[2] we have recounted the facts of this case several times. Briefly: In 2012 Mata fired a gun at his girlfriend's former boyfriend, but missed.

The jury convicted Mata of attempted murder and possession of a firearm by a felon. In a bifurcated proceeding, the trial court found Mata had a 1997 conviction for attempted murder, a serious or violent felony conviction within the meaning of the three strikes law and a serious felony within the meaning of section 667, subdivision (a)(1).[3] The court sentenced Mata to a prison term of life with a minimum parole eligibility of 14 years, plus 20 years for the firearm enhancement under section 12022.53, subdivision (c), and five years for the prior serious felony conviction under section 667, subdivision (a). The court

---

[2] The trial court consolidated this case with an unrelated case in which the People charged Mata with the murder of a rival gang member. (*Mata I*, *supra*, B270264.) The jury could not reach a verdict on the murder charge. After a retrial in the other case, the jury found Mata guilty of first degree murder and possession of a firearm by a felon, and Mata appealed. We affirmed the convictions but directed the trial court to exercise its discretion whether to strike two enhancements in Mata's sentence. (*People v. Mata* (Jan. 2, 2019, B277734) [nonpub. opn.] (*Mata II*).) The trial court reimposed Mata's original sentence, Mata appealed, and we affirmed. (*People v. Mata* (Dec. 21, 2020, B294526) [nonpub. opn.] (*Mata III*).) This appeal is *Mata IV*.

[3] Mata committed the attempted murder on October 23, 1996, when he was 15 years old. The juvenile court found him unfit to remain in the juvenile court system and transferred his case to adult court, where he was convicted.

also imposed but stayed execution of a term of six years for the conviction of possession of a firearm by a felon.

Mata appealed, contending the trial court erred in denying his *Batson/Wheeler* motion. The basis of the motion was that, during voir dire, counsel for Mata argued the prosecutor impermissibly challenged Prospective Juror Nos. 7, 11, and 15 because they were "younger Hispanics." The court found these three challenges, along with a peremptory challenge the prosecutor had previously exercised against Prospective Juror No. 9, established a prima facie case.[4] The prosecutor stated his reasons for exercising a peremptory challenge against Prospective Juror Nos. 7, 11, and 15, which we will discuss in detail later. The prosecutor did not state his reasons for challenging Prospective Juror No. 9. The court denied Mata's *Batson/Wheeler* motion, stating, "The court doesn't find that young persons of any ethnicity are a protected class."

This court held in *Mata I* the trial court erred in failing to elicit the prosecutor's reasons for challenging Prospective Juror No. 9 (step two of the *Batson/Wheeler* inquiry) and in failing to assess the credibility of the prosecutor's reasons for challenging each of the four prospective jurors (step three of the *Batson/Wheeler* inquiry). We conditionally reversed the judgment and directed the trial court to complete steps two and three of the *Batson/Wheeler* inquiry. (*Mata I, supra*, B270264.)

B.     *Remand*

_____

[4]     The court found Prospective Juror No. 9 "had Latino features," and the court included her in its finding Mata had made a prima facie showing of discrimination, even though both the prosecutor and counsel for Mata agreed Prospective Juror No. 9, who had an Asian last name, was Asian. The People did not challenge the court's prima facie finding in *Mata I*, nor do they in this appeal.

On remand the court summarized its understanding of this court's directions in *Mata I*: "To have the People explain . . . the reasons for their excusal of [Prospective] Juror No. 9" and "to balance and evaluate the reasons given by the People and whether the strikes had been proved to be racially discriminatory." The prosecutor gave three reasons for challenging Prospective Juror No. 9, which we will discuss in detail later. Without specifically responding to the prosecutor's reasons for challenging this prospective juror, counsel for Mata stated that, in "the moving papers," "it was referenced" that the prosecutor allowed Juror No. 5 and Juror No. 9 (not to be confused with Prospective Juror No. 9) to remain on the jury and that those jurors were "younger" but "non-Hispanic."[5] The prosecutor reiterated that "youth" or "lack of life experience" was "one of the reasons for some of the peremptory challenges," and the prosecutor described a seated juror, Juror No. 7, as someone with "tremendous life experience."

After further discussion about what had occurred at the first *Batson*/*Wheeler* hearing, Prospective Juror No. 7 suddenly appeared in the courtroom. Unbeknownst to counsel, the trial court had called Prospective Juror No. 7's father, who relayed a

---

[5] Counsel for Mata also referred to a "brief" where "it was referenced" that Juror No. 5 and Juror No. 9 "had the same demographics" as the excused prospective jurors at issue here. The record on appeal does not contain any motion or brief filed by counsel for Mata regarding the prosecutor's peremptory challenges, and Mata does not refer to such a document in his opening brief in this appeal. Counsel for Mata may have been referring to the opening brief appellate counsel filed in *Mata I*, in which Mata argued that a comparative juror analysis showed "life experience" was not the "actual motive in removing Hispanic panelists."

message to the former prospective juror to contact the court. When Prospective Juror No. 7 called the court, he was instructed to come to the courtroom on the day of the hearing. The court confirmed Prospective Juror No. 7's identity, and the clerk put him under oath. The court asked Prospective Juror No. 7 to state his ethnicity, and Prospective Juror No. 7 said he was "half Filipino and half White." Counsel for Mata asked the prospective juror how he identified himself on forms or applications, and Prospective Juror No. 7 said, "White and Asian."

After the court excused Prospective Juror No. 7 and thanked him for coming in, counsel for Mata asked whether the court "made any efforts" to contact the other "subject jurors who were part of the Court of Appeal's opinion." The court stated it had not. Counsel for Mata argued that the court should have informed the attorneys it was going to bring in a prospective juror to testify at the proceeding and that, had counsel known the court was going to do that, he would have asked the court to call in the three other prospective jurors. The court explained it had summoned only Prospective Juror No. 7 because counsel for Mata had agreed Prospective Juror No. 9 was Asian, there did not "seem to be any argument" about whether Prospective Juror No. 11 and Prospective Juror No. 15 were Hispanic, and "it would be in everyone's interest to have [Prospective Juror No. 7] come in . . . so it could be resolved if, in fact, he is a member of a suspect classification that we characterize as Hispanic."

The court stated that, because it had found a prima facie case at the first *Batson/Wheeler* hearing, it intended to include all four challenged prospective jurors in its analysis. Before doing so, the court stated that, "if given the second opportunity," the court "would have modified . . . [its] prima facie finding" with respect to Prospective Juror Nos. 7 and 9. The court stated: "Having made the prima facie finding, I will move on to

6

addressing the second and third [steps]." Assessing the prosecutor's stated reasons for challenging each of the four prospective jurors, the court concluded that, "following the explanations given, the court finds that the defense has failed to prove racial discrimination in the striking of the four prospective jurors."

The trial court denied the motion and reinstated the judgment. Mata timely appealed.

## DISCUSSION

A. *The Trial Court Did Not Prejudicially Err in Denying Mata's* Batson/Wheeler *Motion*

1. *Applicable Law and Standard of Review*

"'[A] prosecutor, like any party, may exercise a peremptory challenge against anyone, including members of cognizable groups. All that is prohibited is challenging a person *because* the person is a member of that group.'" (*People v. Hardy* (2018) 5 Cal.5th 56, 78; see *People v. Smith* (2018) 4 Cal.5th 1134, 1146 ["'a party may exercise a peremptory challenge for any permissible reason or no reason at all'"].) "Both the United States and California Constitutions prohibit discriminatory use of peremptory strikes." (*People v. Reed* (2018) 4 Cal.5th 989, 999.) "To assess whether such prohibited discrimination has occurred, our inquiry under *Batson/Wheeler* follows three distinct, familiar steps." (*Ibid.*) "When a party opposing a peremptory strike makes a prima facie case that the strike was motivated by impermissible discrimination (step 1), the proponent of the strike must offer a nondiscriminatory reason for that challenge (step 2). [Citation.] The question then becomes (step 3) whether the opponent of the peremptory challenge has shown it "'more likely

7

than not that the challenge was improperly motivated.""" (*People v. Baker* (Feb. 1, 2021, S170280) ___ Cal.5th ___, ___ [2021 WL 318247, p. 14]; see *Reed*, at p. 999.)

""""The proper focus of a *Batson/Wheeler* inquiry . . . is on the subjective *genuineness* of the race-neutral reasons given for the peremptory challenge, *not* on the objective reasonableness of those reasons. . . . All that matters is that the prosecutor's reason for exercising the peremptory challenge is sincere and legitimate, legitimate in the sense of being nondiscriminatory.'" [Citation.] "'At the third stage of the *Wheeler/Batson* inquiry, 'the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible. Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.""" (*People v. Miles* (2020) 9 Cal.5th 513, 539.) """"[T]he trial court is not required to make specific or detailed comments for the record to justify every instance in which a prosecutor's race-neutral reason for exercising a peremptory challenge is being accepted by the court as genuine.""" [Citation.] However, "'[w]hen the prosecutor's stated reasons are either unsupported by the record, inherently implausible, or both, more is required of the trial court than a global finding that the reasons appear sufficient.""" (*Ibid.*) "The defendant has the ultimate burden of persuasion regarding the prosecutor's motivation." (*People v. Hardy, supra*, 5 Cal.5th at p. 81; see *People v. Gutierrez* (2017) 2 Cal.5th 1150, 1158 (*Gutierrez*) ["In order to prevail, the movant must show it was "'more likely than not that the challenge was improperly motivated.""].)

"'Review of a trial court's denial of a *Wheeler/Batson* motion is deferential, examining only whether substantial evidence supports its conclusions. [Citation.] "We review a trial court's

8

determination regarding the sufficiency of a prosecutor's justifications for exercising peremptory challenges "'with great restraint.'" [Citation.] We presume that a prosecutor uses peremptory challenges in a constitutional manner and give great deference to the trial court's ability to distinguish bona fide reasons from sham excuses. [Citation.] So long as the trial court makes a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal.'"'" (*People v. Miles*, *supra*, 9 Cal.5th at p. 539.)

> 2. *The Trial Court's Error in Recalling Prospective Juror No. 7 Sua Sponte To Verify His Ethnicity Was Harmless*

Before reviewing the merits of the trial court's ruling on Mata's *Batson/Wheeler* motion, we address a procedural error the trial court committed. Mata contends "the trial court erred when it conducted an evidentiary hearing, at which it received evidence pertaining only to its previous step one *Batson/Wheeler* rulings, which . . . this Court . . . had not . . . re-opened."

We agree the trial court erred in unilaterally calling in Prospective Juror No. 7 to come to court and state his ethnicity: The disposition in *Mata I* did not direct the court to conduct such an inquiry. As Mata correctly points out, the disposition in *Mata I* only directed the trial court to conduct steps two and three of the *Batson/Wheeler* inquiry. (See *People v. Vizcarra* (2015) 236 Cal.App.4th 422, 441 ["'On remand with directions, after a judgment on appeal, the trial court has jurisdiction only to follow the directions of the appellate court; it cannot modify, or add to, those directions.'"]; see also *People v. Ramirez* (2019) 35 Cal.App.5th 55, 64 ["'[t]he order of the reviewing court is contained in its remittitur, which defines the scope of the

9

jurisdiction of the court to which the matter is returned"]; *Ayyad v. Sprint Spectrum*, *L.P.* (2012) 210 Cal.App.4th 851, 860 ["if the reviewing court does not direct the trial court to take a particular action or make a particular determination, the trial court is not authorized to do so"].)

The trial court's procedural error, however, was harmless. (See *People v. Hardy*, *supra*, 5 Cal.5th at p. 77.) The trial court stated that it had found Mata made a prima facie showing and that the court would proceed to the remaining steps of the *Batson/Wheeler* analysis. The trial court made clear that, "separate and apart" from the ethnicity of Prospective Juror No. 7, the court would proceed based on its previous prima facie finding, and the court in fact assessed the prosecutor's reasons for exercising peremptory challenges against all four prospective jurors "without the consideration of [Prospective Juror No. 7's] appearance and [ethnic identity]." The court stated it would "disregard[ ]" Prospective Juror No. 7's ethnicity when evaluating the prosecutor's justifications for challenging him, and nothing in the record indicates the court considered its recently-acquired knowledge that Prospective Juror No. 7 was not, in fact, Hispanic. The record does not support Mata's assertion the "trial court's alternative step-one findings tainted the trial court's subsequent step-three *Batson/Wheeler* rulings."

3. *The Court's Evaluation of the Prosecutor's Reasons for the Peremptory Challenges, Though Not Exemplary, Was Sufficient*

Mata argues the trial court failed to conduct a sincere and reasoned evaluation of each of the four prospective jurors, as evidenced by the court's failure to question the prosecutor or "to evaluate or to make a credibility finding." Although the trial

10

court's inquiry was certainly not a textbook example of how to conduct step three of the *Batson/Wheeler* analysis, the court, in the end, made a sufficiently "'sincere and reasoned attempt'" (*Gutierrez*, *supra*, 2 Cal.5th at p. 1159) to evaluate the prosecutor's reasons for exercising each peremptory challenge. (See *People v. Baker*, *supra*, ___ Cal.5th at p. ___ [p. 19] [while "the trial court certainly 'could have done more to make a fuller record,'" the law "does not require a court in all circumstances to articulate and dissect at length the proffered nondiscriminatory reasons for a strike," and "deference is appropriate" where the trial court makes "a sincere and reasoned effort to evaluate the justifications proffered"].)

### a.     *Prospective Juror No. 7*

Prospective Juror No. 7 was a sixth-year business administration student who lived with his father and stepmother. At the first *Batson/Wheeler* hearing, the prosecutor said he challenged this prospective juror because "it just seemed a little weird that he's in his sixth year of school" and because "he seemed very young and inexperienced." The prosecutor explained he was seeking jurors "with life experiences." On remand the trial court correctly recalled the prosecutor had challenged Prospective Juror No. 7 because "he had concern about [the prospective juror] being . . . a college student of six years" and because the prospective juror looked young. The court agreed the prospective juror in fact looked young, as "verified" by his appearance in court. Thus, the court found the prosecutor's justification for challenging Prospective Juror No. 7 was credible and genuine.

Substantial evidence supported the court's credibility finding. Prospective Juror No. 7 stated he was in his sixth year

11

of college, and counsel for Mata corroborated the youthful appearance of Prospective Juror No. 7 when he described the prospective juror (along with Prospective Juror Nos. 11 and 15) as "younger Hispanics" in their "20's to early 30's." The court similarly found at the first *Batson/Wheeler* hearing that Prospective Juror No. 7 "appeared young." The court did not err in accepting the prosecutor's reasons as a legitimate basis for challenging this prospective juror. (See *People v. DeHoyos* (2013) 57 Cal.4th 79, 108 [a prospective juror's "limited life experience" "constitutes a race-neutral explanation for a peremptory challenge"]; *People v. Lomax* (2010) 49 Cal.4th 530, 575 ["A potential juror's youth and apparent immaturity are race-neutral reasons that can support a peremptory challenge."].) And by finding that "the race-neutral explanations tendered by the prosecution have overcome any suggestion of racial discrimination," the court determined Mata had failed to show "it was "'more likely than not that the challenge was improperly motivated.""" (*Gutierrez*, *supra*, 2 Cal.5th at p. 1158; see *People v. Mai* (2013) 57 Cal.4th 986, 1054 ["[t]he court's assertion that no discriminatory intent was 'inherent' in the prosecutor's explanations is reasonably read as a determination that the court believed them to be true"].)

We acknowledge that, after finding "the reasons given rebut any racial discrimination," the court stated that "the circumstances of the case itself, that all the major parties are Hispanic, does not leave one to believe that the excusal of this juror was for discriminatory purposes." The court summarized its experience presiding in the East District of the Los Angeles County Superior Court for over 32 years and commented on the "dramatic increase over those years of Hispanics in the East District" and "a substantial increase of [Hispanic] jurors." The court stated, "When you have a trial where all civilian witnesses

12

[and] victims are Hispanic, it makes very little sense to exclude jurors because of that ethnicity." Contrary to Mata's suggestion, however, this commentary was not an effort by the court to supply a reason "the prosecution had not proffered" to deny Mata's *Batson/Wheeler* motion. Rather, in context, it was an attempt to evaluate the prosecutor's explanation in light of "the circumstances of the case known at that time" (*Gutierrez, supra,* 2 Cal.5th at p. 1159) and the court's "'experiences as a lawyer and bench officer in the community'" (*People v. Winbush* (2017) 2 Cal.5th 402, 434). (See *People v. DeHoyos, supra,* 57 Cal.4th at p. 115 [the "casewide factors [including that the defendant and the victim were both Hispanic] were appropriately considered by the trial court and further support[ed] its denial of defendant's motion"].)

Mata faults the trial court for failing to "confront" the prosecutor or ask him questions. But because the prosecutor's reasons for challenging Prospective Juror No. 7 were not "'"unsupported by the record"'" or "'"inherently implausible"'" (*People v. Miles, supra,* 9 Cal.5th at p. 539), the trial court did not have to question the prosecutor or make more detailed findings. (See *People v. Mai, supra,* 57 Cal.4th at p. 1054 [trial court did not need to "'explain on the record its ruling on a *Batson/Wheeler* motion'" because "the prosecutor's reasons were plausible and, in all essential respects, supported"].)

### b. *Prospective Juror No. 9*

Prospective Juror No. 9 worked as a legal secretary in the Los Angeles City Attorney's Office and was divorced with two adult children. The prosecutor gave three reasons for challenging this prospective juror: (1) she "personally had a negative experience with [the] police involving her . . . ex-husband" and expressed "doubts" about younger police officers; (2) she "might

have some feelings" from watching television shows about police officers that could affect her judgment in this case; and (3) she hoped the case would be "as simple as . . . one plus one equals two."

The court evaluated the prosecutor's reasons by checking them against the court's recollection of the responses Prospective Juror No. 9 gave during voir dire. The court also stated that the prosecutor's reasons for exercising the peremptory challenge were consistent with the prosecutor's reasons for challenging the same prospective juror for cause. The court found the prosecutor's reasons were credible: "The reasons given today are not belated or fabricated but ones that are supported by the record."

Substantial evidence supported the court's finding. During jury selection, Prospective Juror No. 9 described a negative experience she had with law enforcement, criticized younger police officers, admitted television shows she had seen about police officers might affect her judgment, and said she hoped the case would be a simple one. The court did not err in accepting these reasons as legitimate. (See *People v. Hardy*, *supra*, 5 Cal.5th at p. 82 ["'A "negative experience with law enforcement" is a valid basis for a peremptory challenge.'"]; *People v. Winbush*, *supra*, 2 Cal.5th at p. 439 ["'A prospective juror's distrust of the criminal justice system is a race-neutral basis for excusal.'"]; *People v. Lomax*, *supra*, 49 Cal.4th at p. 573 ["The arrest of a juror or a close relative is an accepted race-neutral reason for exclusion."].)[6] And by finding that the concerns of the prosecutor

---

[6]     Code of Civil Procedure section 231.7, subdivision (e)(1), which applies to criminal jury trials on or after January 1, 2022, provides that "[e]xpressing a distrust of or having a negative experience with law enforcement or the criminal legal system" is

14

were "reasonable," that "the proffered rationale" was "accepted trial strategy," and that "the defense has failed to prove . . . racial discrimination, the court determined the prosecutor did not challenge Prospective Juror No. 9 "on account of bias against an identifiable group distinguished on . . . ethnic, or similar grounds" (*Gutierrez*, *supra*, 2 Cal.5th at p. 1158).

Mata suggests Prospective Juror No. 9 "misunderstood" or "misrepresented" the incident involving the arrest of her ex-husband because the police released her ex-husband the next day. The record, however, supports the prosecutor's concern the prospective juror "formed quick opinions" because she had concluded the arresting officer did not know "all the law" and because she had a one-sided view of the arrest. The record also supports the prosecutor's characterization of Prospective Juror No. 9's prior experience with law enforcement as negative: Referring to her ex-husband's allegedly wrongful arrest, the prospective juror stated she "didn't think that [was] right." Nothing in the record suggests Prospective Juror No. 9 considered her ex-husband's encounter with the police a positive experience. Prospective Juror No. 9's statement she could set aside her perceptions of the police does not detract from the legitimacy of the prosecutor's concern. (See *People v. Bryant*

---

a presumptively invalid reason for a peremptory challenge, "unless the party exercising the peremptory challenge can show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, and that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case." The new law does not apply to Mata's trial, which occurred in 2015.

(2019) 40 Cal.App.5th 525, 537-538 ["whether [the prospective juror] could be fair is irrelevant, because we are addressing peremptory challenges, not challenges for cause"].)

Mata speculates that Prospective Juror No. 9's avid consumption of television police drama may have influenced her to view the prosecution's case favorably and that the prosecutor's concern the prospective juror would bring her "life experience [from watching police shows] into deliberations" was "incongruent" with the prosecutor's interest in selecting jurors "with life experience." The prosecutor's concern with a prospective juror who indicated she might view the evidence through the lens of television police shows, however, was self-evident and did not require further inquiry. (See *Gutierrez, supra,* 2 Cal.5th at p. 1171 ["Some neutral reasons for a challenge are sufficiently self-evident, if honestly held, such that they require little additional explication"].) The prosecutor's desire to select jurors with sufficient life experience to inform their judgment was not inconsistent with his desire to avoid jurors who might use fictitious cases on television to decide cases.

Finally, Mata criticizes the prosecutor for presenting a "laundry list" of reasons and the trial court for finding "one justification among several that could be corroborated" and failing to "subject any other proffered justification for scrutiny." The record contradicts this characterization. The court evaluated the three reasons ("negative experience with law enforcement," "TV influencing her judgment," and desire for the case to be "simple") and found they were credible.

c. *Prospective Juror No. 11*

16

Prospective Juror No. 11 had two jobs, one in customer service at a transportation agency and one as a production assistant for a cable company. He stated that, once or twice a month at family gatherings, he socialized with family members who were affiliated with criminal street gangs. The prosecutor gave two reasons for challenging this prospective juror: "He was young" and "he associates with gang member family members." The court evaluated the prosecutor's justifications by recalling the prosecutor's concerns and stating that "gang membership was a substantial part of the prosecution's case." The court found the prosecutor's justifications credible: "The court . . . finds a race-neutral reason for the exercise of that peremptory and that it was without any racial consideration." Substantial evidence supported the court's findings. Counsel for Mata corroborated Prospective Juror No. 11's youth, and the record accurately reflects the prospective juror socialized with family members with ties to gangs.

Mata argues the prosecution's acceptance of Juror No. 7, an African American man who had been involved with gangs, demonstrated the challenge against Prospective Juror No. 11 "was based on Hispanic ethnicity." The prosecutor, however, gave a plausible explanation for why Juror No. 7, who was "in his mid to late 50's" and "viewed gangs today very differently from his experiences back when he was 13 years old," did not raise the kinds of concerns the prosecutor had with Prospective Juror No. 11. (See *People v. Chism* (2014) 58 Cal.4th 1266, 1319 ["a party legitimately may challenge one prospective juror but not another to whom the same particular concern applies"].) Nor did the statement by Prospective Juror No. 11 that he could be a fair juror require the trial court to discredit the prosecutor's justification. The prosecutor was legitimately concerned about the prospective juror's association with family members who

belonged to gangs, not what the prospective juror stated in voir dire about his ability to be fair. (See *People v. Bryant*, *supra*, 40 Cal.App.5th at pp. 537-538 ["whether [the prospective juror] was 'affected' by her nephew's experience and whether *she* felt she could be a fair and unbiased juror are two different things"].)

### d. *Prospective Juror No. 15*

Prospective Juror No. 15 worked as a supervisor in the customer service department of a car manufacturer. She was single, "never married," and was the mother of five children, one of whom was in the United States Marines. The prosecutor said he challenged this prospective juror because she "appear[ed] very young." In addition, the prosecutor stated: "Frankly, the fact that she also had five kids, never been married, was something that occurred to me." The court stated that, in the first *Batson*/*Wheeler* hearing, counsel for Mata had described this prospective juror as "being young," and the court had described her as "not young but not middle aged." The court commented that "there are differences of opinion in terms of how young or how old." Evaluating the prosecutor's second reason, the court stated that Prospective Juror No. 15's status as an unwed mother of five children could be viewed as "odd" or "untraditional" and that the prosecutor's use of the word "frankly" indicated his "concern . . . for what others might perceive as an unconventional lifestyle."

Although the record does not reflect that the prosecutor was worried about the opinion other people might have about the nontraditional structure of Prospective Juror No. 15's family, the record does support the court's assessment that the prosecutor viewed the prospective juror's status as a single parent of five children as undesirable. Thus, in all essential respects, the trial court credited the prosecutor's unease with Prospective Juror

18

No. 15 by stating that the court had "no concerns as to the veracity of the prosecution's explanation."

Mata argues the trial court's observation that Prospective Juror No. 15 was "not young but not middle age" "directly contradict[ed] the prosecution's proffered explanation." It did not. The court did not disbelieve the age factor, but simply acknowledged that youthful appearance was not something the court could verify in the case of this prospective juror because her age was a matter of opinion. Contrary to Mata's argument, the record actually supports the court's finding that Prospective Juror No. 15 had a youthful appearance. Counsel for Mata described her as "younger" and confirmed at the conclusion of voir dire his view that she "fit [into] the category of younger Hispanics."[7]

Citing *Gutierrez*, *supra*, 2 Cal.5th at page 1172, Mata argues the trial court should have questioned the prosecutor about his concern with Prospective Juror No. 15's marital status because "the objection [was] not obvious." In *Gutierrez* the Supreme Court cautioned that, "when it is not self-evident why an advocate would harbor a concern, the question of whether a neutral explanation is genuine and made in good faith becomes more pressing." (*Id.* at p. 1171.) However, the Supreme Court in *Gutierrez* also recognized that "a peremptory challenge may be based on a broad range of factors indicative of juror partiality, even those which are "'apparently trivial'" or "'highly speculative.'"" (*Ibid.*; see *People v. O'Malley* (2016) 62 Cal.4th

---

[7] Mata's assertion that the prosecutor "stated that Prospective Juror No. 15 'appeared to be in her 50's'" is incorrect. The prosecutor was referring to Prospective Juror No. 9 when he observed the woman "who appeared to be in her 50's . . . worked for the City Attorney's Office."

944, 982 ["'"[H]unches[,]' and even 'arbitrary' exclusion is permissible, so long as the reasons are not based on impermissible group bias."'"].)

While the prosecutor could have better explained (or the trial court could have asked him) why Prospective Juror No. 15's unmarried status, coupled with having five children, motivated him to exercise a peremptory challenge, the absence of a more detailed record does not mean the court failed to conduct a sufficient inquiry. The trial court listened to the prosecutor's explanation, observed his demeanor, stated the prosecutor prefaced his explanation with the word "frankly," and concluded the comment evidenced a legitimate concern with having a juror who has led an "unconventional" life. It was not unreasonable for the trial court to decide that a challenge based on marital status did not require additional explanation. (See *People v. Trinh* (2014) 59 Cal.4th 216, 242 [trial court did not err in ruling that the prosecutor's reason for challenging a prospective juror, "who was 45 and single and had never been married or had children," was "bona fide"]; *United States v. Omoruyi* (9th Cir. 1993) 7 F.3d 880, 881 ["[p]eremptory challenges based on marital status do not violate *Batson*"].)[8]

Because the prosecutor's reasons were plausible and supported by the record, the trial court's inquiry was adequate. (See *People v. Miles*, *supra*, 9 Cal.5th at pp. 540-541 ["the trial court could have done more to make a fuller record," but because "the record show[ed] that the court considered the prosecutor's reasons," and "those reasons were plausible and supported by the

---

8       Code of Civil Procedure section 231.7, subdivision (e)(5), provides that "[h]aving a child outside of marriage" is also a presumptively invalid reason for a peremptory challenge. Again, this new law does not apply to Mata's trial.

20

record," "the trial court's findings [were] entitled to deference"]; *People v. Hamilton* (2009) 45 Cal.4th 863, 907-908 [trial court conducted a "sincere and reasoned evaluation" where the court "listened to the arguments and weighed the facts known about" a challenged prospective juror who "was a young, single mother" against "the prosecutor's desires to have a mature jury, and decided that, although it was a close call, the prosecutor's reasons were legitimate"].)  Therefore, we defer to the court's credibility findings.  (*People v. Smith*, *supra*, 4 Cal.5th at p. 1158; see, e.g., *People v. O'Malley*, *supra*, 62 Cal.4th at p. 982 ["[w]hile certainly 'idiosyncratic' and even 'arbitrary' [citation], the prosecutor's mention of his aversion to having an amateur magician on his jury does not establish that he acted with discriminatory intent, particularly in light of his other, concededly legitimate, reasons for exercising the challenge"].)

### 4.     *A Comparative Juror Analysis Does Not Suggest Pretext*

"'"[C]omparative juror analysis is but one form of circumstantial evidence that is relevant, but not necessarily dispositive, on the issue of intentional discrimination."'" [Citation.]  Comparative juror analysis is appropriately confined to the jurors defendant has specifically discussed in his appellate briefing.  [Citation.]  [¶]  'Where . . . the comparative analysis was not made at trial, "the prosecutor generally has not provided, and was not asked to provide, an explanation for nonchallenges." [Citation.]  Therefore, "an appellate court must be mindful that an exploration of the alleged similarities at the time of trial might have shown that the jurors in question were not really comparable."  [Citation.]  When a defendant asks for comparative juror analysis for the first time on appeal, we have held that "such evidence will be considered in view of the deference

accorded the trial court's ultimate finding of no discriminatory intent.""" (*People v. Miles*, *supra*, 9 Cal.5th at p. 541; see *People v. Krebs* (2019) 8 Cal.5th 265, 293 ["'Comparative juror analysis . . . while subject to inherent limitations, must be considered when reviewing claims of error at *Wheeler*/*Batson*'s third stage when the defendant relies on such evidence and the record is adequate to permit the comparisons.'"].)

"""Two panelists might give a similar answer on a given point.  Yet the risk posed by one panelist might be offset by other answers, behavior, attitudes or experiences that make one juror, on balance, more or less desirable.  These realities, and the complexity of human nature, make a formulaic comparison of isolated responses an exceptionally poor medium to overturn a trial court's factual finding.""" (*People v. Miles*, *supra*, 9 Cal.5th at pp. 543-544.)  "'[B]ecause the ultimate question before us concerns the prosecutor's motivations in exercising the challenge in question, we must ask whether there were any *material* differences among the jurors–that is, differences, other than race, that we can reasonably infer motivated the prosecutor's pattern of challenges.'" (*Id.* at p. 544; see *People v. Winbush*, *supra*, 2 Cal.5th at p. 443 ["[p]retext is established . . . when the compared jurors have expressed 'a substantially similar *combination* of responses,' in all material respects, to the jurors excused"]; *People v. Henderson* (2020) 46 Cal.App.5th 533, 559 [same].)

Mata asserts the trial court "ignored defense counsel's request to conduct a comparative juror analysis."  But trial counsel for Mata did not directly ask the trial court to compare Prospective Juror Nos. 7, 9, 11, or 15 to any specific seated juror. Rather, counsel referred to "moving papers" and a "brief" that "argued" Juror No. 5 and Juror No. 9 (again, not to be confused with Prospective Juror No. 9) "had the same demographics" but

"were non-Hispanic"[9] and suggested that this court in *Mata I* had directed the court to conduct a comparative juror analysis. Although our disposition in *Mata I* did not include such a direction, because Mata relies on such an analysis in this appeal we will compare the jurors he identifies with the prospective jurors the prosecutor challenged. (See *People v. Miles*, *supra*, 9 Cal.5th at p. 541.)

Mata argues Juror No. 5 and Prospective Juror No. 7 "appear to be of similar age and station in life." But Juror No. 5, who was single, lived with her parents, and was studying "to get into nursing school," was not "'materially similar'" (*People v. Hardy*, *supra*, 5 Cal.5th at p. 77) to Prospective Juror No. 7. Although the prosecutor agreed Juror No. 5 appeared young, Juror No. 5 did not take six years to obtain her degree, an aspect about Prospective Juror No. 7 the prosecutor felt was "weird" and caused him concern. (See *People v. Armstrong* (2019) 6 Cal.5th 735, 784 ["[o]verlap on one concern will seldom be sufficient" to establish pretext].) Mata also argues Juror No. 5 appeared "younger than Prospective Juror No. 11" and suggests Juror No. 5 lacked life experience compared to Prospective Juror No. 15. There is no evidence, however, Juror No. 5 appeared younger than Prospective Juror No. 11. And Juror No. 5 did not have any family members who were affiliated with gangs (the second basis for the prosecutor's peremptory challenge against Prospective Juror No. 11), nor was she a single parent of five children (the second basis for the peremptory challenge against Prospective Juror No. 15). Thus, Juror No. 5 was not materially

---

[9] As noted, it appears counsel for Mata may have been referring to the appellate brief filed in *Mata I*, and not to any brief or motion he filed in the trial court requesting a comparative juror analysis.

23

similar to either Prospective Juror No. 11 or Prospective Juror No. 15. (See *People v. Krebs*, *supra*, 8 Cal.5th at p. 294 ["'Advocates do not evaluate panelists based on a single answer. Likewise, reviewing courts should not do so.'"]; *People v. Bryant*, *supra*, 40 Cal.App.5th at pp. 540-541 [although the compared juror shared one trait with the challenged prospective juror, the defendants "did not show any of her other responses were like [the challenged prospective juror's]"].)

There were also material differences between Juror No. 9, who was "married with a baby," and Prospective Juror Nos. 11 and 15. First, there is no evidence Juror No. 9 appeared young, a trait that both the prosecutor and counsel for Mata agreed Prospective Juror Nos. 11 and 15 possessed. That Juror No. 9 was married with a baby does not necessarily mean she appeared as youthful as Prospective Juror Nos. 11 and 15. Second, Juror No. 9 did not regularly associate with family members who were involved with gangs (as Prospective Juror No. 11 did) and was not an unwed mother of multiple children (in contrast to Prospective Juror No. 15). (See *People v. Armstrong*, *supra*, 6 Cal.5th at p. 780.) Third, Juror No. 9 had a cousin in law enforcement, a factor that may have made her appealing to the prosecutor. (See *People v. Miles*, *supra*, 9 Cal.5th at p. 543 ["we need not turn a blind eye to reasons the record discloses for not challenging other jurors" because ""'the risk posed by one panelist might be offset by other answers, behavior, attitudes or experiences that make one juror, on balance, more or less desirable"'"].)

Comparing Juror No. 7 (again, not Prospective Juror No. 7) to Prospective Juror No. 9 or No. 11 does not show the prosecutor based his peremptory challenges on the prospective jurors' ethnicity. Juror No. 7 was married with three adult children, sold cars, and had several cousins who were police officers. Even

though Juror No. 7 said that, as an African American man in Los Angeles he was "harassed by the police," the prosecutor stated that this juror's current attitude about gangs convinced the prosecutor that he would be a good juror. As the prosecutor explained, "I'm not just looking at the words the jurors say, but also their overall life experience and what they bring in totality to the jury box." The prosecutor's acceptance of Juror No. 7 does not show his concern about Prospective Juror No. 9's negative experience with law enforcement was a pretext for discrimination. Nor does it show the prosecutor's concern about Prospective Juror No. 11's youth and monthly visits with family members associated with gangs was a pretext for a discriminatory challenge against him.[10]  (See *People v. Armstrong*, *supra*, 6 Cal.5th at p. 785 ["Prospective jurors must be evaluated as individuals . . . .  What matters is the full range of responses and whether, because of widespread similarities aside from race or gender, a reasonable comparison casts doubt on the honesty of the neutral reasons offered."].)

Finally, Mata asserts Juror Nos. 1 and 12 had "more frequent and direct contacts with gang members" than did Prospective Juror No. 11, that Juror No. 8 had a "more serious negative experience" with law enforcement than did Prospective Juror No. 9, and that Juror No. 2 also had an adult child in the military like Prospective Juror No. 15.  Comparing Juror Nos. 1, 2, and 8 with the prospective jurors the prosecutor challenged is not probative because the trial court found these jurors appeared

---

[10]  Juror No. 7's long-ago experience with gangs is materially different from Prospective Juror No. 11's gang experience, which consisted of current social gatherings with family members who were gang members.

25

to be Hispanic.[11]  (See *People v. Hardy*, *supra*, 5 Cal.5th at p. 77 [a comparative juror analysis allows "'a defendant . . . [to] compare the responses of the challenged jurors with those of similar unchallenged jurors who were not members of the challenged jurors' racial group'"].)  And comparing Juror No. 12 with Prospective Juror No. 11 does not help Mata because Juror No. 12 was retired and was not the kind of "young" prospective juror the prosecutor was seeking to avoid.  (See *People v. O'Malley*, *supra*, 62 Cal.4th at p. 980 ["the differences between [the prospective juror] and the other jurors were significant," which undermined the "defendant's assertion that the prosecutor's stated reasons for excusing [the prospective juror] were merely pretextual"]; *People v. Smith* (2019) 32 Cal.App.5th 860, 879-880 [because "[n]one of [the] jurors [the defendant used as a basis of comparison] had any other serious disqualifying issue," the jurors "were not similarly situated" with the challenged prospective juror].)

B.  *The Trial Court Did Not Err in Reinstating the Judgment*

Mata contends that under Senate Bill No. 1391, which became effective January 1, 2019 and "eliminated district attorneys' ability to request transfer hearing[s] for 14 and 15 year olds" (*B.M. v. Superior Court* (2019) 40 Cal.App.5th 742, 753, review granted Jan. 2, 2020, S259030), his 1997 felony conviction "does not qualify as a strike, and the trial court lacked the authority to sentence him as a second striker."  Mata contends that, for the same reason, his 1997 felony conviction no longer

---

[11]  At the end of jury selection, the trial court found that, of the seated jurors, Nos. 1, 2, 3, 4, 8, and 11 had "physical features of a Hispanic" or a "Hispanic surname."

qualifies as a serious felony under section 667, subdivision (a). We rejected a virtually identical argument in *Mata III, supra,* B294526, holding that Senate Bill No. 1391 applies only to cases that are not final and that Mata's 1997 conviction was final long ago.[12]

The Supreme Court's recent decision in *People v. McKenzie* (2020) 9 Cal.5th 40 (*McKenzie*), cited by Mata in his reply brief, does not suggest a different conclusion. In *McKenzie* the trial court placed the defendant on probation after he pleaded guilty to various drug-related offenses and admitted four prior drug-related felony convictions for purposes of a sentence enhancement under Health and Safety Code, former section 11370.2, subdivision (c). (*McKenzie,* at p. 43.) After the defendant violated the terms of his probation, the trial court revoked probation and imposed the prison sentence that included the prior drug conviction enhancements. (*Ibid.*) While the defendant's appeal was pending, the Legislature enacted Senate Bill No. 180, which amended Health and Safety Code section 11370.2 so that the defendant's prior drug convictions no longer qualified as enhancements. (*McKenzie,* at p. 43.) The Supreme Court held the ameliorative legislative changes applied to the defendant's sentence because "the prosecution had not been 'reduced to final judgment at the time' the revisions took effect." (*Id.* at p. 45; see *People v. Millan* (2018) 20 Cal.App.5th 450, 454-455.)

---

[12]    Mata acknowledges this argument "repeats in large part a claim" he made in *Mata III.*

Unlike the statute involved in *McKenzie*, which specifically addressed the use of prior convictions for increased punishment,[13] Senate Bill No. 1391 says nothing about using a defendant's prior conviction for sentencing purposes. (See *Mata III*, *supra*, B294526.) In addition, while the legislative history of Senate Bill No. 180 included discussion of the problem of sentence enhancements for prior drug convictions (see *McKenzie*, *supra*, 9 Cal.5th at p. 51), there is no indication the Legislature, in enacting Senate Bill No. 1391, was concerned with prior felony convictions.

C.     *One Last Remand Is Appropriate for the Trial Court To Exercise Its Discretion Whether To Strike the Enhancement Under Section 667, Subdivision (a)*

Mata asks us to remand the case and direct the trial court "to exercise its discretion whether to strike the five-year enhancement [under section 667, subdivision (a)], which was mandatory when imposed." On January 1, 2019, three weeks after the trial court reinstated the judgment in this case, the law changed to allow courts to exercise discretion to dismiss a five-year enhancement for a prior serious felony conviction under section 667, subdivision (a), in furtherance of justice. (See Stats. 2018, ch. 1013 § 2 (Senate Bill No. 1393); *People v. Stamps*

---

[13]     Senate Bill No. 180 stated: "Existing law imposes on a person convicted of a violation of . . . specified crimes relating to controlled substances a sentence enhancement . . . for each prior conviction of . . . specified controlled substances crimes . . . . [¶] This bill would . . . limit the above sentence enhancement to only be based on each prior conviction of . . . the crime of using a minor in the commission of offenses involving specified controlled substances." (Legis. Counsel's Dig., Sen. Bill No. 180 (2017-2018 Reg. Sess.).)

28

(2020) 9 Cal.5th 685, 693.) The People concede that the new law applies retroactively to Mata, but argue that "remand is unwarranted because the [court] already declined to strike the section 667, subdivision (a), enhancement following the retrial of the murder count." The People assert that "the record clearly indicate[s] that the [court] would not have dismissed the enhancement even if it had the power to do so."

We agree with Mata's argument and the People's concession that Senate Bill No. 1393 applies to Mata because his judgment is not yet final. (See *People v. Stamps*, *supra*, 9 Cal.5th at p. 699.) But we do not agree with the People that the record in this case clearly indicates the court would not have dismissed the five-year enhancement even if the court had the discretion to do so. "'"[W]hen the record shows that the trial court proceeded with sentencing on the . . . assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing."' [Citation.] Remand is not required, however, if 'the record shows that the trial court clearly indicated when it originally sentenced the defendant that it would not in any event have stricken [the previously mandatory] enhancement.'" (*People v. Henderson*, *supra*, 46 Cal.App.5th at pp. 561-562; see *People v. Franks* (2019) 35 Cal.App.5th 883, 892.) "[W]e review the trial court's statements and sentencing decisions to infer what its intent would have been." (*People v. Jones* (2019) 32 Cal.App.5th 267, 273.)

Here, the trial court did impose the maximum terms on each of Mata's convictions in this case, as it did in *Mata III*, but the court did not make any comments clearly indicating it intended to sentence Mata to prison for as long as possible. The trial court did decline to strike the five-year enhancement in Mata's other case, based in part on the manner in which Mata

29

murdered the victim in that case.  (*Mata III*, *supra*, B294526.) The facts in this case, however, are very different, and the record does not affirmatively show the court would similarly decline to strike the five-year enhancement.  (Cf. *People v. Franks, supra*, 35 Cal.App.5th at p. 893 [record affirmatively showed the trial court would not have exercised its discretion to strike a prior serious felony enhancement when it said, "'I will not exercise my discretion, which I might have, to strike the punishment of either the strike prior or the 667(a) five-year prior that is to be imposed in this case'"]; *People v. Jones, supra*, 32 Cal.App.5th at pp. 273-274 [trial court's expression of its "'great satisfaction in imposing the very lengthy sentence'" and its sentencing choices indicated "there is no possibility the trial court would strike the enhancement were [the court] to remand"].)

## DISPOSITION

The judgment of conviction is affirmed.  The matter is remanded for the exclusive purpose of allowing the trial court to exercise its discretion whether to dismiss the five-year enhancement under section 667, subdivision (a).


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.