Filed 11/28/23  In re Tilei on Habeas Corpus CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re PUNAOFO TSUGITO TILEI, | E080208 |
| on Habeas Corpus, | (Super. Ct. No. RIF080733) |
| | OPINION |

ORIGINAL PROCEEDINGS from the Superior Court of Riverside County.

Bernard Schwartz and Dennis A. McConaghy*, Judges.  Petition Denied.

Martin Kassman, under appointment by the Court of Appeal, for Petitioner.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney

General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers, and Matthew

C. Mulford, Deputy Attorneys General, for Respondent.

*(Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

1

# I.

## INTRODUCTION

In 2000, a jury found defendant and petitioner Punaofo Tilei guilty of attempted murder for repeatedly firing a handgun at the vehicle of a sheriff's deputy, nearly shooting off his finger. This court affirmed defendant's conviction. In 2020, defendant filed a petition for writ of habeas corpus in this court, which we denied. Defendant then filed the instant petition for writ of habeas corpus in the California Supreme Court, arguing his defense counsel violated his Sixth Amendment rights by conceding during closing argument, without defendant's consent, that he shot the deputy. The Supreme Court ordered the Secretary of the Department of Corrections and Rehabilitation (the State) to show cause in this court why defendant "is not entitled to relief under *McCoy v. Louisiana* (2018) 584 U.S. __ [138 S.Ct. 1500] (*McCoy*), and why *McCoy* should not apply retroactively on habeas corpus to final judgments of conviction."

Defendant contends *McCoy* applies retroactively, he is entitled to relief under *McCoy* because he maintained his innocence, and he never consented to conceding factual guilt. We conclude that, even assuming without deciding *McCoy* applies retroactively, defendant is not entitled to relief under *McCoy*. Defendant's habeas writ petition is therefore denied.

II.

FACTUAL AND PROCEDURAL BACKGROUND[1]

A. *Facts*

After attending a birthday party in 1998, defendant and other party attendees went to a nearby alley and took turns firing defendant's handgun.  A sheriff's deputy was dispatched to the alley to investigate.  As the deputy drove down the alley, he heard and saw a man firing a gun at him.  A bullet nearly severed one of the deputy's fingers.

During defendant's trial, one of the witnesses, M.B., testified that after several people fired defendant's gun, someone handed the gun back to defendant.  When someone said, "'Cops coming,'" M.B. and another person fled.  When M.B. turned around, she saw defendant standing alone, with his back to her and his shoulders "'scrunched up.'"  He was holding something out in front of him.  M.B. heard gunshots from where defendant was standing.  On cross-examination, M.B. conceded she initially lied to the police that she was inside another person's home when the deputy was shot and assumed someone other than defendant shot the deputy, because she last saw that person with the gun.

Defendant's sister, E.T., testified she went outside when she heard the initial gunshots and saw defendant and several people standing around.  She then saw a patrol car approaching and everyone left.  Defendant and several others ran between some

[1] The facts and some of the procedural history are drawn from this court's 2000 opinion.  (*People v. Tilei* (July 19, 2000, E023430) [nonpub. opn.].)

buildings. E.T. heard more gunshots coming from between the buildings and saw a white flash.

A police detective testified that during an interview of E.T. on the day of the shooting, E.T. told her that after the police car approached, defendant told everyone to leave. E.T. told defendant, "'Don't do nothing stupid.'" Defendant had a gun in his hand. E.T. saw defendant run toward the area where she heard and saw gunfire.

Two other witnesses testified that the day after the shooting, they went to a motel to pick up defendant. They took him to the apartment of one of the two witnesses. The two witnesses testified they did not recall defendant boast of shooting at a police car the previous night. However, a police detective testified they both told her they had heard defendant boast of shooting at a police car the previous night.

B. *Procedural Background*

Defendant was convicted in 1998 of attempted murder of an officer (§§ 187, 664; count 1), assault with a firearm on a peace officer (§ 245, subd. (d)(1); count 2), and being a felon in possession of a firearm (§ 12021, subd. (a)(1); count 3). The jury also found true allegations defendant discharged a firearm and inflicted great bodily injury (GBI). Defendant admitted he served two prior prison terms. The trial court sentenced defendant to 27 years to life in prison plus a consecutive term of life with the possibility of parole.

1. <u>Appeal of Defendant's Conviction</u>

Defendant appealed his convictions (case no. E023430).  Defendant argued, in part, that his trial attorney provided ineffective assistance of counsel (IAC) by conceding during closing argument, without defendant's consent, that defendant shot the deputy.

This court affirmed the conviction in 2000.  We concluded there was no IAC because counsel's concession to the jury was a reasonable strategy intended to maintain credibility with the jury and was not tantamount to a guilty plea.  Also, counsel did not need to obtain a personal waiver from defendant.

We explained in our decision that "[t]he evidence presented by the prosecution overwhelmingly indicated that defendant fired the gun at the police car.  Defense counsel evidently hoped to convince the jury not to convict his client of attempted murder by acknowledging the assault charged in count II and focusing on defendant's lack of expressed intent to kill.  This concession at closing argument was not tantamount to a guilty plea, and thus trial counsel did not violate defendant's constitutional rights by not obtaining his personal waiver.  (*People* v. *Ratliff* (1986) 41 Cal.3d 675, 697 [(*Ratliff*)].)  For these reasons, trial counsel's concession that defendant pulled the trigger did not constitute ineffective assistance."

## 2. 1999 Petition for Habeas Corpus[2]

In 1999, defendant filed a habeas petition in this court, along with filing his appeal of his conviction. He raised several IAC issues (Exhs. F, G). In June 2000, this court denied the habeas petition as to the IAC issues, as duplicative of the same issues raised in defendant's pending appeal (E025307). This court further ordered the respondent to show cause before the superior court as to the remaining IAC issues raised in the habeas petition and directed the trial court to conduct an evidentiary hearing on them (Exh. G). The reporter's transcript of the evidentiary hearing in which defendant's trial attorney testified regarding his representation of defendant is attached to defendant's habeas petition as Exhibit D. Also attached to defendant's habeas petition filed in the Supreme Court is defendant's declaration dated July 1, 1999 (Exh. A) and defense counsel's letter dated July 2, 1999, explaining the reasons for his actions (Exh. C).

As directed by this court, in April and May 2001, the trial court held an evidentiary hearing on defendant's habeas petition, during which defendant's trial attorney testified regarding IAC issues. The record before this court does not include a copy of the court's decision revealing how defendant's 1999 habeas petition was decided. However, it is apparent that the 1999 habeas petition was unsuccessful because defendant subsequently filed the instant habeas petition in the superior court.

---

[2] Unless stated otherwise, all cited exhibits are to those attached to defendant's habeas petition filed in the Supreme Court on November 2, 2020 (S265323), and received in this court from the Supreme Court on November 17, 2022 (E080208).

6

### 3. 2019 Habeas Petition Filed in the Trial Court and Court of Appeal

In March and May 2019, defendant filed in the trial court a habeas petition and amended habeas petition (the instant case). Defendant argued he was entitled to relief based on *McCoy*, *supra*, 584 U.S. __ [138 S.Ct. 1500]. The trial court requested the State to file an informal response and appointed counsel for defendant. On March 16, 2020, the trial court denied defendant's habeas petition on the ground *McCoy* does not apply retroactively on collateral review (Exhs. I, K). The trial court therefore did not address whether defendant explicitly instructed his trial attorney not to admit guilt at trial, a requirement under *McCoy* for finding a Sixth Amendment violation. Upon review, this court also denied defendant's habeas petition on August 28, 2020.

### 4. 2020 Habeas Petition Filed in the Supreme Court

In November 2020, defendant filed the instant habeas petition in the California Supreme Court (no. S265323), with attached exhibits A through L. On February 22, 2021, the State filed in the Supreme Court an informal response and defendant filed an informal reply in March 2021. On November 9, 2022, the Supreme Court ordered the State to show cause before this court of appeal why defendant is not entitled to relief under *McCoy*, and why *McCoy* should not apply retroactively on habeas corpus to final judgments of conviction.

In January 2023, the State filed a return to defendant's habeas petition, along with an attached copy of the reporter's transcript of the 2001 habeas petition evidentiary hearing held in the trial court. In April 2023, defendant filed his traverse to the State's

return.  Exhibits A, C, D, and F, filed in support of defendant's Supreme Court habeas petition are summarized below as to information and facts relevant to this court's determination of whether defendant is entitled to relief under *McCoy*, *supra*, 584 U.S. __ [138 S.Ct. 1500].

(a) *Exhibit A*

In Exhibit A, defendant stated in his supporting declaration that, from the time he was arrested until his criminal trial began, his attorney, Frank Scott, spoke to him only twice.  Scott told him he believed defendant was guilty.  Defendant did not agree and insisted on a trial because he was not guilty.  Scott never explained or discussed the defense strategy with him.  Defendant further stated in his declaration that before closing argument, "I was never aware that Mr. Scott intended to inform the jury that I was guilty of shooting a gun at the police officer.  I never told Mr. Scott that I shot a gun at the officer.  On the contrary, I always insisted that I was innocent of the charges and I never agreed that Mr. Scott should adopt any other defense position during trial."

(b) *Exhibit D*

In Exhibit D, the transcript of the 2001 habeas petition evidentiary hearing states that Scott testified he made court appearances in the trial court with defendant and, during that time, Scott discussed with defendant the defense strategy and tactics.  Scott also met with defendant three times at the county jail, as confirmed by the jail visitation records.  During those visits, Scott discussed with defendant trial strategy and tactics, and the strength of both sides' evidence.

8

Scott further testified during the 2001 evidentiary hearing that defendant told him he was not the person who fired the gun at the deputy. However, during the course of defendant's trial, Scott determined that the best strategy was to concede defendant committed the shooting. At the onset of the trial and during closing argument, Scott informed the jury that defendant shot the deputy. Scott's strategy was to focus on the specific intent element of attempted murder. Before the onset of the trial and during the trial, Scott did not obtain defendant's consent to adopt that strategy. Scott considered and rejected the defense strategies of attacking the credibility of the prosecution's witnesses, and of arguing their lack of credibility and reasonable doubt. After the trial, Scott told defendant's appellate attorney that, based on what he knew before and during the trial, he concluded the alibi defense was hopeless.

In addition, Scott testified during the 2001 evidentiary hearing that he explained to defendant the trial procedures and what he was doing, and indicated that he was going to try to avoid defendant going to prison for the rest of his life. This was Scott's primary objective. Scott stated he was not claiming that defendant understood that Scott was going to challenge the intent element by saying defendant had no intent to kill the officer when he shot the gun. Scott explained: "Over the last two or three months up to and during trial, Mr. Tilei did not have a lot to say. When we would have meetings, the meeting might last for 15 or 20 minutes, and he might only offer eight or ten words. So I can't say that I have an assessment of his specific understanding." Scott felt there was

not a breakdown in his relationship with defendant, although it was approaching that. Defendant listened to everything Scott had to say.

Scott added that he did not normally "lay out specifically what the strategies were to choose between. It would be my belief that I am required to make those strategic decisions, and so I made them." Scott testified that he never told defendant he thought defendant was guilty, never cut him off or prevented him from telling Scott about the case, and tried to get defendant to talk about the case factually and procedurally. Scott also testified that defendant might have never been aware that Scott intended to inform the jury he shot the gun. Scott believed there was overwhelming evidence that defendant had a gun prior to the shooting and he shot the deputy.

Scott thought it would be "ludicrous" to maintain that someone other than defendant was the shooter because there were a number of witnesses who would have identified him as one of the shooters. Scott said it had been his tactic all along to attack the attempted murder intent element. He believed the best defense he could provide was to attack the count 1 (attempted murder) intent element because count 1 carried the most severe penalty and was "the most attackable." Scott therefore concluded the assault count (count 2) was easily provable, whereas there was no direct evidence of the count 1 intent element. There was only circumstantial evidence of it.

After hearing the testimony and argument, the trial court stated it found that "based upon the evidence that I have heard in this case, there was a rather closed-mouth relationship on the part of the defendant with his lawyer." The court's other factual findings ordered by this court concerned the issue of IAC, which is not before this court in the instant matter.

(c) *Exhibit F*

Attached to Exhibit F is a declaration dated July 8, 1999, by defendant's appellate attorney, Sharon Jones, regarding her investigation of defendant's IAC claims. Jones's declaration states that when retained to represent defendant in his habeas petition appeal, she investigated whether defendant received ineffective representation by Scott. Scott told her that he never considered presenting a defense that defendant was not the shooter. Jones sent Scott two letters in May and June 1999, inviting him to submit a declaration explaining his tactical reasons for failing to conduct an investigation in defendant's case and for the other errors raised in defendant's habeas petition.

(d) *Exhibit C*

In response to Jones's letters, Scott sent Jones a letter dated July 2, 1999 (Exh. C), stating in his letter: "Mr. Tilei was looking at a life sentence if convicted as charged. The evidence overwhelmingly indicated that Mr. Tilei had the gun, shot the gun, removed himself to San Bernardino and confessed to two individuals that he did just that. There was no credible evidence to the contrary. Maintaining that someone else was the shooter, in my judgment would have been ludicrous. My evaluation of the case is that it was

11

weak and attackable on an element, that, had we prevailed, would have avoided a life sentence for Mr. Tilei.  This was, in my judgment, the only hope, the only credible defense, that Mr. Tilei possessed.  Therefore, I pursued that strategy."

III.

*McCOY* RELIEF

Defendant contends he is entitled to relief under *McCoy* and *McCoy* applies retroactively.  Regardless of whether *McCoy* applies retroactively, we conclude defendant is not entitled to relief under *McCoy*.

Defendant argues that under *McCoy*, his trial counsel violated his Sixth Amendment right to control his defense by conceding defendant shot the deputy.  This concession by Scott, defendant argues, amounted to an unauthorized guilty plea, when Scott stated during closing argument the following:  "'Well, there is only one issue.  And, that is, what was in the mind, that is to say, what was the intent of Mr. Tilei when he pulled the trigger?  [¶]  Now, there really isn't any question, is there, about who pulled the trigger, who fired the shots, who left Moreno Valley and went to San Bernardino?  We all know, not just you, not just the prosecutor.  I know as well.  And I think that we're all uncomfortable with it, to put it mildly.  [¶]  He fired at the police officer.  That's assault.  That's what we call a general intent crime.  He intended to fire the gun.  He intend [*sic*] to fire am [*sic*] gun at the direction of or at the police car, or the police officer.'"

A. *Applicable Law*

"'Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel.'" (*People v. Palmer* (2020) 49 Cal.App.5th 268, 279-280, quoting *People v. Ledesma* (1987) 43 Cal.3d 171, 215.) However, "[t]o gain assistance, a defendant need not surrender control entirely to counsel," as "'an assistant, however expert, is still an assistant.'" (*McCoy*, *supra*, 584 U.S. _ [138 S.Ct. at p. 1508].) Thus, "[t]rial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.'" (*Ibid.*) In contrast, "[s]ome decisions . . . are reserved for the client—notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." (*Ibid.*) We review de novo the legal question of whether defendant's constitutional rights were violated. (*People v. Palmer*, *supra*, at p. 280.) "'A violation of the client's right to maintain his or her defense of innocence implicates the client's autonomy (not counsel's effectiveness).'" (*Ibid.*) Thus, any such error is structural and not subject to harmless error review. (*Ibid.*)

In *McCoy*, *supra*, 584 U.S. _ [138 S.Ct. 1500], the United States Supreme Court held a defendant "has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty." (*Id.* at p. 1505.) In that case, the defendant was

13

charged with three counts of murder, and he "vociferously insisted that he did not engage in the charged acts and adamantly objected to any omission of guilt." (*Ibid*.) However, after reviewing the evidence, defense counsel concluded the best strategy to avoid a death sentence was to concede guilt. (*Id*. at p. 1506.) Counsel discussed the strategy with McCoy, who opposed it "at every opportunity, before and during trial, both in conference with his lawyer and in open court." (*Id*. at p. 1509.) Additionally, McCoy sought to terminate his counsel's representation before trial, in light of his planned strategy, but the trial court denied the motion. (*Id*. at p. 1506.) Thereafter, in both his opening and closing statements, and in contrast to McCoy's trial testimony and against McCoy's wishes, counsel conceded guilt "but urged mercy." The jury returned three death verdicts. (*Id*. at p. 1507.)

The Supreme Court in *McCoy* held that counsel may not admit a client's guilt of charged crimes "over the client's intransigent objection to that admission." (*McCoy*, *supra*, 584 U.S. _ [138 S.Ct. at p. 1510]; see also *Id*. at p. 1505 ["it is the defendant's prerogative, not counsel's, to decide on the objective of his defense."].) In so holding, the court distinguished *Florida v. Nixon* (2004) 543 U.S. 175 (*Nixon*), in which the defendant was charged with murder. (*McCoy*, *supra*, 584 U.S. _ [138 S.Ct. at p. 1509].) Defense counsel in *Nixon*, concluded the best strategy to obtain leniency was to concede guilt. (*Nixon*, *supra*, at pp. 180-181.) Defense counsel explained the proposed strategy to Nixon several times, but Nixon was "generally unresponsive" and "never verbally approved or protested" the strategy. (*Id*. at p. 181.) Defense counsel then conceded guilt

in his opening and closing statements. (*Id*. at pp. 182-184.) The jury found the defendant guilty and recommended the death penalty. (*Id*. at p. 184.)

The *McCoy* court observed that counsel in *Nixon* "did not negate Nixon's autonomy by overriding Nixon's desired defense objective, for Nixon never asserted any such objective. . . . Nixon complained about the admission of his guilt only after trial," in contrast to McCoy, who repeatedly voiced his objection to admitting guilt during the entirety of the proceedings. (*McCoy*, *supra*, 584 U.S. _ [138 S.Ct. at p. 1509].) *McCoy* thus reasoned that, "[i]f a client declines to participate in his defense, then an attorney may permissibly guide the defense pursuant to the strategy she believes to be in the defendant's best interest. Presented with express statements of the client's will to maintain innocence, however, counsel may not steer the ship the other way." (*McCoy*, *supra*, 584 U.S. _ [138 S.Ct. at p. 1509].) A *McCoy* violation thus requires the record shows "(1) that defendant's plain objective is to maintain his innocence and pursue an acquittal, and (2) that trial counsel disregards that objective and overrides his client by conceding guilt." (*People v. Eddy* (2019) 33 Cal.App.5th 472, 482.)

"California courts following *McCoy* repeatedly have held that [the] case applies only where defendant actively opposes counsel's concession." (*People v. Villa* (2020) 55 Cal.App.5th 1042, 1056 (*Villa*); see *People v. Bernal* (2019) 42 Cal.App.5th 1160, 1166 (*Bernal*) ["*McCoy* does not assist defendant because the record here does not reflect a directive to counsel that defendant's objective at trial was to maintain innocence on all charges."]; *People v. Burns* (2019) 38 Cal.App.5th 776, 784 ["*McCoy* is . . . predicated

15

on a client's *express objection* to defense counsel's concession strategy," italics added]; *People v. Franks* (2019) 35 Cal.App.5th 883, 891 ["for a Sixth Amendment violation to lie, a defendant must make his intention to maintain innocence clear to *his counsel*, and counsel must override that objective by conceding guilt"]; *People v. Lopez* (2019) 31 Cal.App.5th 55, 66.)

B. *Discussion*

Defendant argues *McCoy*, *supra*, 584 U.S. _ [138 S.Ct. 1500], requires reversal here. We disagree. *McCoy* is distinguishable because the defendant there "vociferously insisted on his innocence and adamantly objected to any admission of guilt," yet the trial court allowed his counsel to concede that the defendant committed three murders. (*McCoy*, *supra*, 584 U.S. _ [138 S.Ct. at p. 1503].) Here, defense counsel concluded that the best strategy to avoid defendant being convicted of attempted murder was to concede that defendant fired his gun at the deputy but without intent to kill him. During and before the trial, defendant did not expressly object to this strategy.

Defendant argues he did not have an opportunity to object to the strategy because his attorney did not tell him the strategy before conceding during closing argument that defendant shot the deputy. But defense counsel was not required to do so. (*Ratliff*, *supra*, 41 Cal.3d at p. 697.) Defendant's attorney's concession during closing argument that defendant shot the deputy was not tantamount to a guilty plea requiring a waiver. (*Ibid.*)

16

In *Ratliff*, *supra*, 41 Cal.3d 675, during closing argument, defense counsel conceded that the defendant committed burglary. Defense counsel argued that although the defendant may have committed a burglary of construction site homes and may have stolen three lamps, he did not rob or shoot anyone. On appeal, the defendant argued that such a concession was reversible error because it was tantamount to a guilty plea requiring his personal waiver of his constitutional rights. The *Ratliff* court disagreed, explaining: "Counsel's tactical decision to argue a particular personal view of the evidence, indicating that his client may have committed only a lesser offense, is not akin to pleading guilty to that offense. Once a defendant has elected to proceed with a contested trial, rather than plead guilty or accept sentencing based upon a preliminary examination transcript, the manner of presenting evidence to the jury becomes one of trial tactics properly vested in counsel, at least in the absence of a conflict between counsel and his client." (*Id.* at p. 697.) Here, the record does not show defense counsel was aware there was any conflict between Scott and defendant when Scott conceded defendant shot the deputy.

The *Ratcliff* court further stated that it was understandable that defense counsel, "'given the weight of incriminating evidence, made no sweeping declarations of his client's innocence but instead adopted a more realistic approach, namely, that *although defendant and others may have committed both burglaries, and may have aided and abetted the acts of violence which caused the victims' deaths*, nonetheless any such acts were unpremeditated and lacked the requisite deliberation and intent to kill . . . . "[G]ood

17

trial tactics demanded complete candor" with the jury. [Citation.]'" (*Ratliff*, *supra*, 41 Cal.3d at p. 697.) The *Ratcliff* court concluded that, not only did such candor not constitute IAC, but in addition, "imposition of a duty to obtain personal waivers of constitutional rights whenever such tactics are anticipated could substantially interfere with counsel's tactical conduct of the trial. Accordingly, we decline to require such personal waivers in these circumstances." (*Id*. at p. 697.)

Here, defense counsel's trial strategy of conceding defendant shot the deputy but arguing he did not intend to kill him constituted reasonable "trial tactics properly vested in counsel," and there was no need to obtain a waiver or consent to proceed with the defense strategy, where defense counsel was not conceding guilt. There was also no evidence in the record that defendant expressed any objection or disagreement with such a strategy. (*Ratliff*, *supra*, 41 Cal.3d at p. 697; see also *People v. Lopez*, *supra*, 31 Cal.App.5th at p. 63 [finding *McCoy* distinguishable because the defendant did not object to attorney's concession of guilt].)

Although defendant asserted he was innocent, as most defendants requesting a criminal trial do, defendant's attorney did not concede defendant was guilty of attempted murder. Defense counsel only conceded defendant fired a gun at the deputy, and there was overwhelming evidence in support. Defense counsel did not concede the additional requisite element of intent. "[S]hooting at a person or persons and thereby endangering their lives does not itself establish the requisite intent for the crime of attempted murder. 'Attempted murder requires the *specific intent to kill* and the commission of a direct but

18

ineffectual act toward accomplishing the intended killing.'" (*People v. Perez* (2010) 50 Cal.4th 222, 224, italics added, quoting *People v. Lee* (2003) 31 Cal.4th 613, 623.) Defense counsel therefore argued there was insufficient evidence to support an attempted murder conviction.

*McCoy* thus does not apply here because defense counsel did not admit defendant was guilty of attempted murder, and defendant did not object beforehand to this trial strategy. (*McCoy*, *supra*, 584 U.S. _ [138 S.Ct. at p. 1510]; see also *Id*. at p. 1505.) Defendant urges this court to extend *McCoy*'s analysis to cases, "such as this one, where the defendant has not expressly raised an objection." (*People v. Lopez*, *supra*, 31 Cal.App.5th at p. 66.) "[W]e have found no authority, nor has [the defendant] cited any, allowing extension of *McCoy*'s holding to a situation where the defendant does not expressly disagree with a decision relating to his right to control the objective of his defense." (*Ibid*.)

Even assuming without deciding that *McCoy* can be applied retroactively here, we conclude *McCoy* does not apply because it is distinguishable, as we similarly concluded in *In re Smith* (2020) 49 Cal.App.5th 377 (*Smith*). In *Smith*, we held *McCoy* did not apply where the defendant confessed to the police that he killed the victim, then pleaded not guilty, and testified at trial that he was innocent and had lied in his confession. The prosecutor asserted in closing argument that the defendant was guilty of first degree murder. Defense counsel responded during closing argument that the defendant committed second degree murder, not first degree murder. The defendant interrupted and

19

said he did not do it. The court conducted a hearing, during which defense counsel stated he had advised the defendant that the jury would not believe his trial testimony, and the best strategy therefore was to argue he was only guilty of the lesser offenses. (*Smith*, *supra*, at pp. 389-390.)

This court in *Smith* concluded *McCoy* did not apply because the "petitioner did not object or seek to substitute counsel *prior* to the defense counsel's closing argument." (*Smith*, *supra*, 49 Cal.App.5th at p. 390.) Although in *Smith* the defendant testified on his own behalf, maintaining his innocence, and objected at closing when his counsel conceded guilt, we held that the record failed to show he expressly and unambiguously stated an intent to maintain his factual innocence before counsel conceded it. (*Id.* at pp. 386-390.) "He did not 'vociferously insist' that he did not engage in the charged acts *prior* to counsel's argument." (*Id.* at p. 390.) While the defendant objected during closing argument, "it was after the concession had been made, so it cannot be said that at the time counsel made the concession, it was over [the defendant's] intransigent and unambiguous objection." (*Ibid.*)

Defendant argues *Smith* is distinguishable because in *Smith*, defense counsel told the defendant that he was going to make the concession to the jury *before* defense counsel did so during closing argument, and the *Smith* defendant did not object until after the concession was made. This distinction is not dispositive here. Regardless of whether defense counsel explained his strategy to defendant before conceding defendant fired his gun at the deputy, there was no violation of defendant's Sixth Amendment right to an

20

autonomous defense under *McCoy* because there is no evidence (1) defendant told his attorney not to concede he shot the deputy or (2) that he objected to his counsel's strategy of conceding this but arguing defendant was not guilty of attempted murder because there was no evidence of the intent element. (See *Villa*, *supra*, 55 Cal.App.5th at p. 1056 [no *McCoy* violation where there was no evidence the defendant opposed his attorney's trial strategy, and the defendant's not guilty plea and failure to admit guilt was not enough to establish a violation].)

As we explained in *Villa*, *supra*, 55 Cal.App.5th 1042, "Villa has not shown his defense counsel violated his right to exclusive control of his defense. Even assuming counsel's remark that Villa had driven while drunk and 'made mistakes' and her omission of comments defending him against three of the charges in closing argument constituted concessions of guilt, he hasn't shown he opposed the concessions. California courts following *McCoy* repeatedly have held that case applies only where defendant actively opposes counsel's concession. (*People v. Franks*, *supra*, 35 Cal.App.5th at p. 891 ['for a Sixth Amendment violation to lie, a defendant must make his intention to maintain innocence clear *to his counsel*, and counsel must override that objective by conceding guilt'].)" (*Villa*, *supra*, 55 Cal.App.5th at p. 1056.)

Defendant states in his supporting declaration that, when he spoke to his attorney before the trial, defendant told him he would not plead guilty and insisted on a trial because he was not guilty of the charges. Defendant further states that his attorney never explained or discussed the defense strategy. Before closing argument, he was therefore

21

unaware his attorney intended to tell the jury that defendant shot the officer. Yet, there is no showing defendant attempted to dictate his defense, or that his attorney disregarded such efforts. Instead, the record shows that defendant said very little to his attorney regarding his defense, other than possibly insisting he was innocent of the charges.

Although defense counsel may not have clearly explained to defendant that the defense strategy would include conceding defendant shot the deputy, defendant is not asserting IAC. His claim is only that his attorney violated his Sixth Amendment right to defense autonomy by conceding he shot the deputy. That issue is distinct from an IAC objection. (See *McCoy*, *supra*, 584 U.S. _ [138 S.Ct. at pp. 1510-1511] ["Because a client's autonomy, not counsel's competence, is in issue, we do not apply our ineffective-assistance-of-counsel jurisprudence"].)

The record here does not show that defendant's attorney disregarded defendant's objective of an acquittal on the attempted murder charge by conceding defendant shot the deputy. The record instead shows his attorney pursued a reasonable defense strategy of proving defendant's innocence by focusing on the lack of evidence of the requisite element of intent and bolstering the defense credibility by conceding defendant shot the deputy, which the jury was likely to find true based on strong, persuasive evidence.

Relying on *Eddy*, *supra*, 33 Cal.App.5th 472, defendant argues he is entitled to relief under *McCoy* because his attorney not only conceded the actus reus of attempted murder but also conceded guilt of the charged crime of assault with a firearm (count 2). But "*McCoy* does not assist defendant because the record here does not reflect a directive

22

to counsel that defendant's objective at trial was to maintain innocence on all charges." In *Bernal*, because the defendant was faced with incriminating evidence presented at trial, defense counsel did not contest every charge when addressing the jury in closing argument. (*Bernal*, *supra*, 42 Cal.App.5th at p. 1165.) The *Bernal* court concluded that *McCoy* did not apply under such circumstances because there was no indication that the "defendant instructed counsel not to concede guilt on the relevant charges in closing argument, nor did he ask to replace appointed counsel because of disagreement over trial strategy." (*Id*. at p. 1166.)

The court in *Bernal* distinguished *Eddy*, *supra*, 33 Cal.App.5th at page 481, cited by the defendant on appeal: "[T]here the defendant moved to replace his appointed counsel postverdict, and testimony during a hearing on that motion established that trial counsel was aware before closing argument that the defendant disagreed with the strategy of conceding guilt." (*Bernal*, *supra*, 42 Cal.App.5th at p. 1166.) The *Bernal* court concluded that the record in *Bernal* was more like *Nixon*, *supra*, 543 U.S. at pages 189 565, "which found no constitutional violation with a silent record on whether the defendant disagreed with his attorney's concession of guilt, and with the first complaint about the concession coming only after trial." *Bernal* reiterated that caselaw has "interpreted *McCoy* to require express disagreement with counsel for a claimed constitutional violation to have merit in this context." (*Bernal*, *supra*, at p. 1166, citing *People v. Franks*, *supra*, 35 Cal.App.5th at p. 891; *People v. Burns*, *supra*, 38 Cal.App.5th at p. 784.)

23

Concluding there was no Sixth Amendment violation under *McCoy* or incompetent representation, the *Bernal* court reasoned: "Absent a contrary directive or timely objection from the client, conceding guilt on the charges for which there was overwhelming evidence would be a reasonable strategy to garner credibility and cultivate a more favorable environment for the jury's consideration of defense arguments regarding the charges that *were* reasonably in dispute. This was not a 'fail[ure] to function in any meaningful sense as the Government's adversary.' [Citation.] To the contrary: it was a considered effort to achieve the best result possible for the client under difficult circumstances." (*Bernal*, *supra*, 42 Cal.App.5th at p. 1167.)

Here, Scott focused on a defense strategy to garner credibility and cultivate a more favorable environment for the jury's consideration of defense arguments regarding the attempted murder charge that was reasonably in dispute. Scott explained during his testimony that he did not normally "lay out specifically what the strategies were to choose between. It would be my belief that I am required to make those strategic decisions, and so I made them." When explaining his defense strategy, Scott stated that he thought it would be ludicrous to maintain that someone other than defendant was the shooter because there were a number of witnesses who would have identified him as one of the shooters. Scott said he believed the best defense he could provide was to attack the count 1 (attempted murder) intent element because count 1 carried the most severe penalty and was "the most attackable." Scott concluded the assault count was easily

24

provable (count 2), whereas there was no direct evidence of the count 1 intent element. There was only circumstantial evidence of intent.

Although defendant may not have been aware before closing argument that his attorney was going to concede that he shot the deputy, there is no evidence in the record that defendant objected to this strategy beforehand. In addition, unlike in *Eddy*, defendant did not object to the concession in the trial court right after it was made or during sentencing. Defendant also did not make a *Marsden* motion or make any attempt to replace his attorney after the concession was made. We therefore conclude that, even assuming without deciding that *McCoy* applies retroactively, *McCoy* is inapplicable on the merits.

We also reject defendant's request to order an evidentiary hearing on the factual issue of whether Scott reasonably believed he had defendant's consent to tell the jury that defendant shot the deputy. There was an evidentiary hearing in 2001, in the trial court, ordered by this court on defendant's habeas petition filed in this court. The evidentiary hearing fully addressed the factual issues regarding Scott's representation of defendant and concession that defendant shot the deputy. An additional evidentiary hearing is therefore unnecessary and not appropriate here. This court finds there is not a reasonable likelihood that defendant may be entitled to relief, or that such relief depends on the resolution of any issue of fact which has not been addressed in the previous evidentiary hearing. (*People v. Duvall* (1995) 9 Cal.4th 464, 480, 483; Cal. Rules of Court, rule 8.386(f)(1).)

25

IV.

DISPOSITION

Defendant's petition for writ of habeas corpus is denied on the ground defendant is not entitled to relief under *McCoy*.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON_____

J.

We concur:

RAMIREZ_____

P. J.

McKINSTER_____

J.